# INTERNATIONAL TEXTBOOK COMPANY *v.* PIGG.

· ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 15. Argued April 21, 1909.—Decided April 4, 1910.

The reasonable construction of a state statute relating to foreign corporations doing business within the State does not include the doing of a single act or the making of a single contract, but does include a continuous series of acts by an agent continuously within the State. *Cooper Manufacturing Company* v. *Ferguson,* 113 U. S. 727.

A foreign corporation engaged in teaching by correspondence and which continuously has an agent in a State securing scholars and receiving and forwarding the money obtained from them, is doing business in the State; and such a corporation does business in Kansas within the meaning of § 1283 of the general statutes of that State of 1901.

Commerce is more than traffic; it is intercourse, and the transmission of intelligence among the States cannot be obstructed or unnecessarily encumbered by state legislation. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.,* 96 U. S. 1.

Intercourse or communication between persons in different States through the mails and otherwise, and relating to matters of regular continuous business, such as teaching by correspondence, and the making of contracts relating to the transportation thereof, is commerce among the States within the commerce clause of the Federal Constitution.

A state statute which makes it a condition precedent to a foreign corporation engaging in a legitimate branch of interstate commerce to obtain what practically amounts to a license to transact such business is a burden and restriction ·upon interstate commerce and as such is unconstitutional under the commerce clause of the Federal Constitution; and so held as to the requirements of §.1283, General Laws of Kansas of 1901, when applied to a foreign corporation carrying on the business of teaching persons in that State by correspondence conducted from the State in which it is organized.

*Quære* how far a foreign corporation carrying on business in a State may claim equality of treatment with individuals in respect to the right to sue and defend in the courts of that State; but where a condition precedent to a foreign corporation doing business at all in a State is unconstitutional, the·further condition that it cannot

maintain any action in the courts of the State until it has complied with such unconstitutional condition is also stricken down as being inseparable therefrom.

Where a statute is unconstitutional in part the whole statute must be deemed invalid except as to such parts as are so disconnected with the general scope that they can be separably enforced; and so held as to the provisions in § 1283 of the General Laws of Kansas of 1901 against a foreign corporation maintaining any action until it has complied with another provision as to filing a detailed statement which is unconstitutional as to foreign corporations engaged in interstate commerce.

76 Kansas, 328, reversed.

THE facts, which involve the constitutionality of § 1283 of the General Statutes of Kansas of 1901, are stated in the opinion.

*Mr. James M. Beck*, with whom *Mr. Seth T. McCormick* and *Mr. David C. Harrington* were on the brief, for plaintiff in error:

The contract between the plaintiff and the defendant for the shipment by the plaintiff from Scranton, Pennsylvania, to the defendant in Topeka, Kansas, of printed and documentary merchandise for a pecuniary consideration, was a transaction of interstate commerce. *Rearick* v. *Pennsylvania*, 203 U. S. 507, 512; *Swift* v. *United States*, 196 U. S. 375, 398.

Plaintiff's business is essentially and practically that of compiling, printing, selling and shipping educational publications. As such it is one of the greatest, if not the greatest, educational publication house in the world.

It was formed in October, 1891, and it now has $6,000,000 of paid up capital; 2,800 employees, including an instruction staff of 400 trained teachers; 200 courses of study; its pamphlets and text-books are protected by 5,700 copyrights; it has three home office buildings, of seven acres floor space, and its annual expenditures include $100,000 for postage, $350,000 for printing and $250,000 for preparation and revision of courses. It has enrolled to April 1, 1909, over 1,100,000 purchasers of its educational literature. Its printing establish-

ment issues over 25,000,000 separate pieces of printed matter each year. In the first fifteen years of its existence, its receipts were over $28,000,000.

The case presents every element of a transaction of interstate commerce. There is a vendor and a vendee, a thing bought and a thing sold, a price paid and merchandise delivered. Such merchandise is physically delivered by the vendor directly to the vendee and such delivery is effected, as in the case under consideration, by a continuous and unbroken shipment from a destination in one State to a destination in another, forming "a current of commerce among the States." *Swift* v. *United States*, 196 U. S. 375, 399.

Even if the "instruction papers" were not regarded in common with all other educational publications as printed merchandise but simply as printed information of a peculiar or special character it would nevertheless be within the commerce clause of the Constitution. To sell information in a concrete and tangible form, as in a printed pamphlet, is as much a commercial transaction as to sell a bushel of wheat or a pound of iron. *Gibbons* v. *Ogden*, 9 Wheat. 1; and see Mr. Justice Johnson's concurring opinion in *Gibbons* v. *Ogden*, p. 222; *Passenger Cases*, 7 How. 282; *Covington Bridge Company* v. *Kentucky*, 154 U. S. 204, 218. Indeed, the mere transmission of intelligence or information is commerce, even without regard to its strictly commercial purpose. *Pensacola Tel. Co.* v. *Western Un. Tel. Co.*, 96 U. S. 1; *West. Un. Tel. Co.* v. *Pendleton*, 122 U. S. 347; *Lottery Cases*, 188 U. S. 321. While policies of insurance have been held not to be articles of commerce, this is wholly for the reason that they are mere contracts for the ultimate and possible payment of money.

Shipping newspapers from New York to Texas is a transaction of interstate commerce, *Preston* v. *Finley*, 27 Fed. Rep. 850, 857; also shipment of books from one State to another. *In re Nichols*, 48 Fed. Rep. 164; *In re White*, 43 Fed. Rep. 914; *Culberson* v. *Am. T. & B. Co.*, 107 Alabama, 457.

Anything which can be bought and sold is a subject of commerce and it cannot be reasonably questioned that these educational pamphlets, prepared at so much expense, could be bought and sold like any other commodity. *Butler Bros. Shoe Co.* v. *United States Rubber Co.*, 156 Fed. Rep. 1, 17.

The right to engage in interstate commerce includes the right to employ representatives to solicit contracts for the purchase of interstate commodities, and the mere fact that such an agent solicits a contract, and collects the price, does not give the State any larger power to burden or restrain such business by license taxes or police regulations. *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 491, 493; *Lyng* v. *Michigan*, 135 U. S. 161, 166; *Norfolk & Western R. R. Co.* v. *Pennsylvania*, 136 U. S. 114; *Crutcher* v. *Kentucky*, 141 U. S. 47, 57–59; *Caldwell* v. *North Carolina*, 187 U. S. 622, 623.

The statutes of Kansas, requiring plaintiff to obtain its "permission" to engage in interstate commerce and burdening the exercise of its constitutional right to do so with license taxes, and fees, and penalizing the plaintiff for engaging in interstate commerce without the "permission" of the State by denying to the plaintiff equality of judicial relief in its courts, are unconstitutional.

The right of a State altogether to exclude foreign corporations or to impose conditions upon their right to do business within the State, is so far modified and restricted by the commerce clause of the Constitution that the State cannot exclude any foreign corporation from entering said State to engage in interstate commerce with its citizens. *Stockton* v. *Balt. R. R. Co.*, 32 Fed. Rep. 9; *Pensacola Tel. Co.* v. *Western Un. Tel. Co.*, 96 U. S. 1; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Norfolk & Western R. R. Co.* v. *Pennsylvania*, 136 U. S. 114, 118; *Crutcher* v. *Kentucky*, 141 U. S. 47, 57; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Brennan* v. *Titusville*, 153 U. S. 289. See also *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburgh* v.

*Hennick*, 129 U. S. 142; *Pembina Mining Co.* v. *Pennsylvania*, 128 U. S. 190.

In the absence of congressional action, the Constitution provides that interstate commerce be free. This rule applies no matter how salutary the police regulations might otherwise be, or however insignificant the tax. Any burden or condition is void except such purely local police regulations as refer strictly to the health or morals of the community.

The requirements of §§ 1260 and 1283 may not in themselves be unreasonable, but their fatal defect is that they exercise a power which belongs exclusively to Congress. Section 1283 is so inseparably linked with the other statutory requirements that the burden is much greater than merely filing these annual statements.

When the Kansas statutes state that a foreign corporation engaged in interstate commerce cannot as to a transaction in such commerce enforce its claims in the courts of Kansas, it in part, and in many cases altogether, prohibits the making of such contracts and therefore the carrying on of such commerce.

The judicial enforcement of a contract is as much a part of the contract as vital motion is a part of vital existence. It cannot be argued that while Kansas could not prohibit the making of a contract in interstate commerce it could destroy its very life.

It matters not whether an attempted regulation of such commerce by the State is through its executive or judiciary, for the State may not "by any of its agencies, legislative, executive or judicial," impair or destroy a right under the Constitution of the United States. *San Diego Land Co.* v. *National City*, 174 U. S. 739, 753; *C., B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226, 234.

A judicial regulation which directly burdens interstate commerce, is as invalid as an act of the executive. *Security Ins. Co.* v. *Prewitt*, 202 U. S. 246, distinguished, as not applying to a case where a Federal right was sought to be indirectly

nullified through a destruction of judicial relief. *Ex parte Young,* 209 U. S. 123.

The Kansas statute clearly operates to deny to the plaintiff the full and equal protection of the laws. The plaintiff is within its constitutional rights in declining to comply with the requirements thereof. *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 736. With the exception of the Supreme Court of Kansas it has been uniformly held by state courts that such a law is unconstitutional. *Underwood Typewriter Co.* v. *Pigott,* 60 W. Va. 532; *S. C.,* 55 S. E. Rep. 664; *Woessner* v. *Cottam & Co.,* 47 S. W. Rep. 678; *Lane Co.* v. *City Electric Co.,* 72 S. W. Rep. 425; *Texas Railway Co.* v. *Davis,* 54 S. W. Rep. 381; *Coweta Fertilizer Co.* v. *Brown,* 163 Fed. Rep. 162, 168; *Greek-American Sponge Co.* v. *Drug Co.,* 124 Wisconsin, 469, 476; *Haldy* v. *Tomoor-Haldy Co.,* 4 Ohio Decs. 118; *Hargraves Mills* v. *Harden,* 25 N. Y. Misc. 665; *Coit & Co.* v. *Sutton,* 102 Michigan, 324; *Gunn* v. *Sewing Mach. Co.,* 57 Arkansas, 24; *Hovey's Estate,* 198 Pa. St. 385; *Savage* v. *Atlanta Home Ins. Co.,* 66 N. Y. Supp. 1105; *S. C.,* 55 App. Div. 20.

The right to contract within a State implies necessarily the right to use the courts of the State to enforce the contract. *Von Hoffman* v. *Quincy,* 4 Wall. 535.

While a State is competent to regulate the procedure of its courts it cannot so regulate them as to discriminate against those who are engaged in interstate commerce by denying to them judicial remedies on terms of absolute equality with other litigants. A State cannot discriminate against citizens or products of other States, *Railroad* v. *Husen,* 95 U. S. 465; *Minnesota* v. *Barber,* 136 U. S. 313; *Brimmer* v. *Rebman,* 138 U. S. 78; *Voight* v. *Wright,* 141 U. S. 62; *Tiernan* v. *Rinker,* 102 U. S. 123; *Guy* v. *Baltimore,* 100 U. S. 434; *Welton* v. *Missouri,* 91 U. S. 275; *Walling* v. *Michigan,* 116 U. S. 446; nor impose a tax on interstate commerce either by a tax laid on the transportation of the subjects of that commerce, *State Freight Tax,* 15 Wall. 232, 279; *Telegraph Co.* v. *Texas,* 105 U. S. 460, 465; *People* v. *Compagnie &c. Trans-*

*atlantique,* 107 U. S. 59; or by a tax on the receipts derived from that transportation or upon the capital stock of the carrier, *Phila. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *West. Un. Tel. Co.* v. *Alabama,* 132 U. S. 472; *Pensacola Tel. Co.* v. *West. Un. Tel. Co.,* 96 U. S. 1; *Ratterman* v. *West. Un. Tel. Co.,* 127 U. S. 411; *West. Un. Tel. Co.* v. *Pennsylvania,* 128 U. S. 39; *West. Un. Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Fargo* v. *Michigan,* 121 U. S. 230; *California* v. *Central Pacific,* 127 U. S. 1; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; or by means of a license fee on the privilege or occupation of engaging in interstate commerce, *Robbins* v. *Shelby Co.,* 120 U. S. 489; *Corson* v. *Maryland,* 120 U. S. 502; *Leloup* v. *Mobile,* 127 U. S. 640; *Harman* v. *Chicago,* 147 U. S. 396; *Brennan* v. *Titusville,* 153 U. S. 289; *Moran* v. *New Orleans,* 112 U. S. 69; *Asher* v. *Texas,* 128 U. S. 129; *McCall* v. *California,* 136 U. S. 104; *N. & W. R. Co.* v. *Pennsylvania,* 136 U. S. 114; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Henderson* v. *Mayor,* 92 U. S. 259; *Pickard* v. *Pullman Co.,* 117 U. S. 34; *Webber* v. *Virginia,* 103 U. S. 344; *Stoutenburgh* v. *Hennick,* 129 U. S. 141; nor can a State in any way attempt to regulate interstate commerce by imposing burdensome conditions under which it may be conducted whether by fixing rates, *Wabash Ry. Co.* v. *Illinois,* 118 U. S. 557; *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, or preventing the introduction of certain articles of commerce, *Bowman* v. *Chicago Ry. Co.,* 125 U. S. 465; *Leisy* v. *Hardin,* 135 U. S. 100; or by requiring telegraphic messages to be sent in the order received and delivered by messengers within one mile of the office, *West. Un. Tel. Co.* v. *Pendleton,* 122 U. S. 347; or by requiring common carriers to give equal passenger accommodations without distinction on account of race or color. *Hall* v. *DeCuir,* 95 U. S. 485.

A State may not destroy a Federal right by a threatened denial of judicial relief in the courts of the State. *Ex parte Young,* 209 U. S. 123; *Cotting* v. *Stockyards,* 183 U. S. 79.

To the extent that this plaintiff conducts its business

through the mails, it is not important whether the subject-matter, which is transmitted from Pennsylvania to Kansas, was an article of commerce or not, or whether its mere transmission was strictly interstate commerce, for the State of Kansas was powerless to invade the exclusive power of the Federal Government to determine what should and what should not be transported through the mails. See *Ex parte Jackson*, 96 U. S. 727; *In re Rapier*, 143 U. S. 110; *Horner* v. *United States* (No. 1), 143 U. S. 207.

As to how the words in § 1260 "doing business" or "engaged in business" have been judicially construed by the courts of other States than Kansas, see *Bertha Zinc Co.* v. *Clure*, 7 Misc. Rep. (N. Y.) 23; *Washington Mills Co.* v. *Roberts*, 8 App. Div. (N. Y.) 201; *Southern Cotton Oil Co.* v. *Roberts*, 25 App. Div. (N. Y.) 13; *Soda Fount Co.* v. *Roberts*, 20 App. Div. (N. Y.) 585; *Kellogg Newspaper Co.* v. *Roberts*, 30 App. Div. (N. Y.) 150; *Ware Cattle Co.* v. *Anderson et al.*, 77 N. W. Rep. 1026; *Holder* v. *Aultman*, 169 U. S. 81; *Sullivan* v. *Sullivan Timber Co.*, 15 So. Rep. 941; *Toledo Commercial Co.* v. *Glen Mfg. Co.*, 45 N. E. Rep. 197; *Mearshon & Co.* v. *Lumber Co.*, 187 Pa. St. 12; *Wolff-Dryer Co.* v. *Bigler & Co.*, 192 Pa. St. 466; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *David & Rankin Mfg. Co.* v. *Dix*, 64 Fed. Rep. 406–412; *Brewing Co.* v. *Roberts*, 22 App. Div. (N. Y.) 282; *Smith Co.* v. *Roberts*, 27 App. Div. (N. Y.) 455; *Beard* v. *Publishing Co.*, 71 Alabama, 60; *Murphy Varnish Co.* v. *Connell*, 10 Misc. Rep. (N. Y.) 553; *Harlan & Hollingsworth Co.* v. *Campbell*, 139 N. Y. 68; *Chicago Stock Yards Company* v. *Roberts*, 154 N. Y. 1; *Havens & Geddes Co.* v. *Diamond*, 93 Ill. App. 557.

These cases hold that a corporation incorporated to do a manufacturing business, and exercising all its corporate franchises in the State where it is incorporated and manufactures the article which it sells in the State where it is incorporated, although it sends agents to other States to sell its goods, does not engage in business in the other States.

It can only be stated "doing business" in other States when it opens its manufacturing establishment and manufactures its goods in another State.

There was no appearance or brief filed for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by the International Textbook Company in one of the courts of Kansas—the court of Topeka—to recover from Pigg, the defendant in error, the sum of $79.60 with interest as due the plaintiff under a written contract between him and that company made in 1905. The case was tried upon agreed facts and judgment was rendered in favor of the defendant for his costs. That judgment was affirmed in a state District Court, which held that the plaintiff was not entitled to maintain the action, and the latter judgment was affirmed by the Supreme Court of Kansas.

It is assigned for error that the final judgment—based upon certain provisions of the statutes of Kansas, to be presently referred to—was in violation of the company's rights under the Constitution of the United States.

The facts agreed to—using substantially the language of the parties—make substantially the following case:

The International Textbook Company is a Pennsylvania corporation, and the proprietor of what is known as the International Correspondence Schools at Scranton in that Commonwealth. Those Schools have courses in Architecture, Chemistry, Civil, Mechanical, Electrical and Steam Engineering, English Branches, French, German, Mathematics and Mechanics, Pedagogy, Plumbing, Heating, Telegraphy and many other subjects. It has a capital stock, and the profits arising from its business are distributed in dividends or applied otherwise as the company may elect. The executive officers of the company, as well as the teachers and instructors employed by it, reside and exercise their respective functions at Scranton.

Its business is conducted by preparing and publishing instruction papers, textbooks and illustrative apparatus for courses of study to be pursued by means of correspondence, and the forwarding, from time to time, of such publications and apparatus to students. In the conduct of its business the company employs local or traveling agents, called Solicitor-Collectors, whose duties are to procure and forward to the company at Scranton, from persons in a specified territory, on blanks furnished by it, applications for scholarships in its Correspondence Schools, and also to collect and forward to the company deferred payments on scholarships. In order that applicants may adopt applications to their needs each Solicitor-Collector is kept informed by correspondence with the company of the fees to be collected for the various scholarships offered and of the contract charges to be made for cash or deferred payments, as well as the terms of payment acceptable to the company. In conformity with the contract between the company and its scholars, the scholarship and instruction papers, text-books and illustrative apparatus called for under each accepted application are sent by the company from Scranton directly to the applicant and instruction is imparted by means of correspondence through the mails between the company at its office in that city and the applicant at his residence in another State.

During the period covered by the present transaction the company had a Solicitor-Collector for the territory that included Topeka, Kansas, and he solicited students to take correspondence courses in the plaintiff's schools. His office in Kansas was procured and maintained at his own expense, for the purpose of furthering the procuring of applications for scholarships and the collection of fees therefor. The company had no office of its own in that State. The Solicitor-Collector was paid a fixed salary by the company and a commission on the number of applications obtained and the collections made. He sent daily reports to the company for his territory, those reports showing that for March, 1906, the aggregate collections

on scholarships and deferred payments on subscriptions ap-
proached $500.

At the date of the agreement sued on, and at the time this
suit was brought, numerous persons in Topeka were taking
the plaintiff's course of instruction by correspondence through
the mails.  The contracts for those courses were procured by
its Solicitor-Collector assigned to duty in Kansas, and, as
stated, payments thereon were collected and remitted by him
to the plaintiff at Scranton.

The written contract in question, signed by the defendant at
Topeka, Kansas, and accepted by the company at Scranton
showed that he had subscribed for a scholarship covering a
course of instruction by correspondence in Commercial Law,
and had agreed to pay therefor $84, in installments.  When this
suit was brought there remained unpaid on the principal of
that subscription the sum of $79.60.

The present action was brought to recover that sum, with
interest, as due the company under the defendant's contract
with it.  The defendant did not deny making the contract nor
that he was indebted to the company in the amount for which
he was sued.  But it was adjudged, in conformity with his
contention, that by reason of the company's *failure to comply
with certain provisions of the statutes of Kansas*, it was not en-
titled to maintain this action in a court *of Kansas*.

We will now refer to the provisions of the Kansas statute
under which the Textbook Company was held not to be en-
titled to maintain the present action in the courts of the State.
The statute, the plaintiff alleges, cannot be applied to it with-
out violating its rights under the Constitution of the United
States.

By § 1260 of the Kansas General Statutes of 1901 it is pro-
vided, among other things, that a corporation organized under
the laws of any other State, Territory or foreign country and
seeking to do business in Kansas, may make application to the
State Charter Board, composed of the Attorney General, the
Secretary of State and the State Bank Commissioner, for "per-

mission" to engage in business in that State as a foreign
corporation. It is necessary that the application should be
accompanied by a fee of $25, and as a condition precedent
to obtaining authority to transact business in the State, a cor-
poration of another State was required to file in the office of the
Secretary of State its written consent, irrevocable, that
process against it might be served upon that officer. § 1261.
In passing upon the application the Charter Board is au-
thorized to make special inquiry in reference to the solvency
of the corporation, and if they determined that such corpo-
ration was properly organized in accordance with the laws
under which it was incorporated, "that its capital is unim-
paired and that it is organized for a purpose for which a do-
mestic corporation may be organized" in Kansas, then its
application is to be granted, and a certificate issued, setting
forth the fact that "the application has been granted and that
such foreign corporation may engage in business in this State."
Before filing its charter, or a certified copy thereof, with the
Secretary of State the corporation is required to pay to the
State Treasurer for the benefit of the "permanent school
fund" a specified per cent of its capital stock. §§ 1263,
1264. The last-named section was the subject of extended
examination in *Western Union Tel. Co.* v. *Kansas*, recently
decided (216 U. S. 1), and was held to be unconstitutional in
its application to the Western Union Telegraph Company
seeking to do local business in Kansas.

But the section which controlled the decision by the state
court in the present case is § 1283, which is as follows: "It
shall be the duty of the president and secretary or of the
managing officer of each corporation for profit doing business
in this State, except banking, insurance and railroad corpo-
rations, annually, on or before the 1st day of August, to pre-
pare and deliver to the Secretary of State a complete detailed
statement of the condition of such corporation on the 30th
day of June next preceding. Such statement shall set forth
and exhibit the following, namely: 1st. The authorized capital

stock. 2d. The paid-up capital stock. 3d. The par value and the market value per share of said stock. 4th. A complete and detailed statement of the assets and liabilities of the corporation. 5th. A full and complete list of the stockholders, with the post-office address of each, and the number of shares held and paid for by each. 6th. The names and post-office addresses of the officers, trustees or directors and manager elected for the ensuing year, together with a certificate of the time and manner in which such election was held . . . and the failure of any such corporation to file the statement in this section provided for within ninety days from the time provided for filing the same shall work the forfeiture of the charter of any corporation organized under the laws of this State, and the charter board may at any time thereafter declare the charter of such corporation forfeited, and upon the declaration of any such forfeiture it shall be the duty of the attorney-general to apply to the District Court of the proper county for the appointment of a receiver to close out the business of such corporation; and such failure to file such statement by any corporation doing business in this State and *not organized under the laws of this State shall work a forfeiture of its right or authority to do business in this State,* and the charter board may at any time declare such forfeiture, and shall forthwith publish such declaration in the official State paper. . . . No action shall be maintained or recovery had in any of the courts of this State by any corporation doing business in this State without *first* obtaining the certificate of the Secretary of State that statements provided for *in this section* (§ 1283) have been properly made." L. 1898, ch. 10, § 12, as amended by L. 1901, ch. 126, § 3.

1. In view of the nature and extent of the business of the International Textbook Company in Kansas, the first inquiry is whether the statutory prohibition against the maintaining of an action in a Kansas court by "any corporation *doing business in this* [that] *State*" embraces the plaintiff corporation. It must be held, as the state court held, that it does; for,

it is conceded that the Textbook Company did not, before bringing this suit, make, deliver and file with the Secretary of State either the statement or certificate required by § 1283; and upon any reasonable interpretation of the statute that company, both at the date of the contract sued on, and when this action was brought, must be held as "*doing business*" in Kansas. It had an agent in the State who was employed to secure scholars for the schools conducted by correspondence from Scranton, and to receive and forward any money obtained from such scholars. Its transactions in Kansas, by means of which it secured applications from numerous persons for scholarships, were not single or casual transactions, such as might be deemed incidental to its general business as a foreign corporation, but were parts of its regular business continuously conducted in many States for the benefit of its Correspondence Schools. While the Supreme Court of Kansas has distinctly held that the statute did not embrace single transactions that were only incidentally necessary to the business of a foreign corporation, it also adjudged that the business done by the Textbook Company in Kansas was not of that kind, but indicated a purpose to regularly transact its business from time to time in Kansas, and therefore it was to be regarded as doing business in that State within the meaning of the statute; and that it "was the intention of the legislature that the State should reach every continuous exercise of a foreign franchise," and that it should apply even where the business of the foreign corporation was "purely interstate commerce." *Deere* v. *Wyland*, 69 Kansas, 255, 257, 258; *State* v. *Book Co.*, 65 Kansas, 847; *Commission Co.* v. *Haston*, 68 Kansas, 749. In our judgment, those rulings as to the scope of the statute were correct. They were in substantial harmony with the construction placed by this court upon a Colorado statute somewhat similar to the Kansas act. A statute passed in execution of a provision in the Colorado constitution required foreign corporations as a condition of their authority "to do business" in that State, to make and file with the Secretary of

State a certificate covering certain specified matters. An Ohio corporation having made in Colorado a contract for the sale of machinery to be sent to it from the latter State to Ohio and the vendor having failed to perform the contract, a suit was brought against him in the Federal court, sitting in Colorado. One of the defenses was the failure of the Ohio, corporation to make and file with the Secretary of State the certificate required by the Colorado statute before it should be "authorized or permitted to do any business" in Colorado. It became necessary to inquire whether the Ohio corporation, by reason of the above isolated contract, did business in Colorado within the meaning of the constitution and laws of the latter State. This court said: "Reasonably construed, the constitution and statute of Colorado forbid, not the doing of a single act of business in the State, but the carrying on of business by a foreign corporation without the filing of the certificate and the appointment of an agent as required by the statute. . . . The making in Colorado of the *one* contract sued on in this case, by which one party agreed to build and deliver in Ohio certain machinery and the other party to pay for it, did not constitute a carrying on of business in Colorado. . . . To require such a certificate as a prerequisite to the doing of *a single act of business* when there was no purpose to do any other business or have a place of business in the State, would be unreasonable and incongruous." *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 728, 734.

In view of the agreed facts and the principles announced both by the Kansas Supreme Court and by this court we hold that, within the meaning of § 1283 of the Kansas statute, the International Textbook Company was doing business in the latter State at the time the contract in question was made, and was therefore within the terms of that section.

2. But this view as to the meaning of the Kansas statute does not necessarily lead to an affirmance of the judgment below if, as the plaintiff contends, the business in which it is regularly engaged is interstate in its nature, and if the statute,

by its necessary operation, materially or directly burdens that business.

It is true that the business in which the International Textbook Company is engaged is of a somewhat exceptional character, but, in our judgment, it was, in its essential characteristics, commerce among the States within the meaning of the Constitution of the United States. It involved, as already suggested, regular and, practically, continuous intercourse between the Textbook Company, located in Pennsylvania, and its scholars and agents in Kansas and other States. That intercourse was conducted by means of correspondence through the mails with such agents and scholars. While this mode of imparting and acquiring an education may not be such as is commonly adopted in this country, it is a lawful mode to accomplish the valuable purpose the parties have in view. More than that; this mode—looking at the contracts between the Textbook Company and its scholars—involved the transportation from the State where the school is located to the State in which the scholar resides, of books, apparatus and papers, useful or necessary in the particular course of study the scholar is pursuing and in respect of which he is entitled, from time to time, by virtue of his contract, to information and direction. Intercourse of that kind, between parties in different States—particularly when it is in execution of a valid contract between them—is as much intercourse, in the constitutional sense, as intercourse by means of the telegraph—"a new species of commerce," to use the words of this court in *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1, 9. In the great case of *Gibbons* v. *Ogden,* 9 Wheat. 1, 189, this court, speaking by Chief Justice Marshall, said, "Commerce, undoubtedly, is traffic, but it is something more; it is *intercourse.*" Referring to the constitutional power of Congress to regulate commerce among the States and with foreign countries, this court said in the *Pensacola case,* just cited, that "it is not only the right but the duty of Congress to see to it that *intercourse* among the States and *the transmission*

*of intelligence* are not obstructed or unnecessarily encumbered by state legislation." This principle has never been modified by any subsequent decision of this court.

The same thought was expressed in *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, 356, where the court said: "Other commerce deals only with persons, or with visible and tangible things. But the telegraph transports nothing. visible and tangible; it carries only *ideas, wishes, orders,* and *intelligence.*" It was said in the Circuit Court of Appeals for the Eighth Circuit, speaking by Judge Sanborn, in *Butler Bros. Shoe Co.* v. *United States Rubber Co.,* 156 Fed. Rep. 1, 17, that "all interstate commerce is not sales of goods. Importation into one State from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different States, which contemplates and causes such importation, whether it be of goods, persons, *or information,* is a. transaction of interstate commerce." If intercourse between persons in different States by means of telegraphic messages conveying intelligence or information is commerce among the States, which no State may directly burden or unnecessarily encumber, we cannot doubt that intercourse or communication between persons in different States, by means of correspondence through the mails, is commerce among the States within the meaning of the Constitution, especially where, as here, such intercourse and communication really relates to matters of regular, continuous business and to the making of contracts and the transportation of books, papers, etc., appertaining to such business. In our further consideration of this case we shall therefore assume that the business of the Textbook Company, by means of correspondence through the mails and otherwise between Kansas and Pennsylvania, was interstate in its nature.

3. We must next inquire whether the statute of Kansas, if applied to the International Textbook Company, would directly burden its right by means of correspondence through the mails and by its agents, to secure written agreements with

persons in other States, whereby such persons, for a valuable
consideration, contract to pay a given amount for scholarships
in its Correspondence Schools, and to have sent to them, as
found necessary, from time to time, books, papers, apparatus
and information, needed in the prosecution, in their respective
States, of the particular study which the scholar has elected to
pursue under the guidance of those who conduct such schools
at Scranton? Let us see what effect the statute by its neces-
sary operation must have on the conduct of the company's
business.

. In the first place, it is made a condition precedent to the au-
thority of a corporation of another State, except banking, in-
surance and railroad corporations, to do business in Kansas,
that it shall prepare, deliver *and file with the Secretary of State* a
detailed "Statement," showing the amount of the authorized,
paid-up, par and market value of, its capital stock, its assets
and liabilities, a list of its stockholders, with their respective
post-office addresses and the shares held and paid for by each,
and the names and post-office addresses of the officers, trus-
tees, or directors and managers.

In the next place, the statute denies to the corporation
doing business in Kansas the right to maintain an action in a
Kansas court, *unless it shall first obtain* a certificate of the
Secretary of State to the effect that the Statement, required
by § 1283, *has been properly made.*

Was it competent for the State to prescribe, as a condition
of the right of the Textbook Company to do interstate business
in Kansas, such as was transacted with Pigg, that it should
prepare, deliver, and file with the Secretary of State the
Statement mentioned in § 1283? The above question must
be answered in the negative upon the authority of former
adjudications by this court. A case in point is *Crutcher* v.
*Kentucky*, 141 U. S. 47, 56, 57, often referred to and never
qualified by any subsequent decision. That case arose under
a statute of Kentucky regulating agencies of foreign express
companies. The statute required as a condition of the right

of the agent of an express company, not incorporated by the laws of Kentucky, to do business in that Commonwealth, to take out a license from the State Auditor, and to make and file in the Auditor's office a statement showing that the company had an actual capital of a given amount, either in cash or in safe investments, exclusive of costs. These requirements were held by this court to be in violation of the Constitution of the United States in their application to foreign corporations engaged in interstate commerce. The court said: "If the subject was one which appertained to the jurisdiction of the State legislature, it may be that the requirements and conditions of doing business within the State would be promotive of the public good. It is clear, however, that it would be a regulation of interstate commerce in its application to corporations or associations engaged in that business; and that is a subject which belongs to the jurisdiction of the National and not the State legislature. Congress would undoubtedly have the right to exact from associations of that kind any guarantees it might deem necessary for the public security, and for the faithful transaction of business; and as it is within the province of Congress, it is to be presumed that Congress has done, or will do, all that is necessary and proper in that regard. Besides, it is not to be presumed that the State of its origin has neglected to require from any such corporation proper guarantees as to capital and other securities necessary for the public safety. If a partnership firm of individuals should undertake to carry on the business of interstate commerce between Kentucky and other States, it would not be within the province of the State legislature *to exact conditions on which they should carry on their business, nor to require them to take out a license therefor.* To carry on interstate commerce is not a franchise or a privilege granted by the State; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business,

cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject." Again, in the same case: "Would any one pretend that a State legislature could prohibit a foreign corporation—an English or a French transportation company, for example—from coming into its borders and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some State officer, *and filing a sworn statement as to the amount of its capital stock paid in?* And why not? Evidently *because the matter is not within the province of State legislation,* but within that of national legislation." Further, in the same case: "We do not think that the difficulty is at all obviated by the fact that the express company, as incidental to its main business, (which is to carry goods between different States,) does also some local business by carrying goods from one point to another within the State of Kentucky. This is, probably, quite as much for the accommodation of the people of that State as for the advantage of the company. But whether so or not, it does not obviate the objection that the regulations as to license *and capital stock* are imposed *as conditions on the company's carrying on the business of interstate* commerce, which was manifestly the principal object of its organization. *These regulations are clearly a burden and a restriction upon that commerce.* Whether intended as such or not, they operate as such. But taxes or license fees in good faith imposed exclusively on express business carried on wholly within the State would be open to no such objection." To the same general effect are many other cases. *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489; *Leloup* v. *Mobile,* 127 U. S. 640; *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *Lyng* v. *Michigan,* 135 U. S. 166; *McCall* v. *California,* 136 U. S. 104; *Norfolk & Western Railroad Co.* v. *Pennsylvania,* 136 U. S. 114; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1. It is true that the statute does not, in terms, require the corporation of another State engaged in interstate commerce to take

out what is technically "a license" to transact its business in Kansas. But it denies all authority to do business in Kansas unless the corporation makes, delivers and files a "Statement" of the kind mentioned in § 1283. The effect of such requirement is practically the same as if a formal license was required as a condition precedent to the right to do such business. In either case it imposes a *condition* upon a corporation of another State seeking to do business in Kansas, which, in the case of interstate business, is a regulation of interstate commerce and directly burdens such commerce. The State cannot thus burden interstate commerce. It follows that the particular clause of § 1283 requiring that "Statement" is illegal and void.

In this connection it is to be observed that by the statute the doors of Kansas courts are closed against the Textbook Company, unless it *first* obtains from the Secretary of State a certificate showing that the "Statement" mentioned in § 1283 has been properly made. In other words, although the Textbook Company may have a valid contract with a citizen of Kansas, one directly arising out of and connected with its interstate business, the statute denies its right to invoke the authority of a Kansas court to enforce its provisions unless it does what we hold it was not, under the Constitution, bound to do, namely, make, deliver and file with the Secretary of State the Statement required by § 1283. If the State could, under any circumstances, legally forbid its courts from taking jurisdiction of a suit brought by a corporation of another State, engaged in interstate business, upon a valid contract arising out of such business and made with it by a citizen of Kansas, it could not impose on the company, as *a condition of its authority to carry on its interstate business in Kansas*, that it shall make, deliver and file that Statement with the Secretary of State and obtain his certificate that it had been properly made. This court held in *Chambers* v. *Baltimore & Ohio Railroad Co.*, 207 U. S. 142, 148, that a State may, subject to the restrictions of the Federal Constitution, "determine the limits of the jurisdiction of its courts, and the character of the

controversies which shall be heard in them." But it also said in the same case: "The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution." How far a corporation of one State is entitled to claim in another State, where it is doing business, equality of treatment with individual citizens in respect of the right to sue and defend in the courts is a question which the exigencies of this case do not require to be definitely decided. It is sufficient to say that the requirement of the Statement mentioned in § 1283 of the statute imposes a direct burden on the plaintiff's right to engage in interstate business, and, therefore, is in violation of its constitutional rights. It is the established doctrine of this court that a State may not, in any form or under any guise, directly burden the prosecution of interstate business. But such a burden is imposed when the corporation of another State, lawfully engaged in interstate commerce, is required, as a condition of its right to prosecute its business in Kansas, to make and file a Statement setting forth certain facts which the State, confessedly, could not control by legislation. It results that the provision as to the Statement mentioned in § 1283 must fall before the Constitution of the United States, and with it— according to the established rules of statutory construction— must fall that part of *the same section* which provides that the obtaining of the certificate of the Secretary of State that such Statement has been properly made shall be a condition precedent to the right of the plaintiff to maintain an action in the courts of Kansas. Section 1283, looking at the object for which it was enacted, must be regarded as an entirety. These

parts of the statute are so connected with and dependent upon each other that the clause, relating to actions brought in the courts of Kansas cannot be separated from the prior clause in the *same section* referring to the Statement to be filed with the Secretary of State, and the former left in force after the latter is stricken down as invalid. As the clause about suits in the courts of Kansas *expressly refers* to the prior clauses *in the same section* prescribing the Statement to be filed with the Secretary of State, the clause relating to suits would be meaningless without reference to the latter. We cannot suppose, from the words of the statute, that the legislature would have adopted the regulation about actions in the state courts, except for the purpose of enforcing the prior clause in the same section relating to the Statement to be filed with the Secretary of State. The several parts of the section are not capable of separation if effect be given to the legislative intent. It is well settled that if a statute is in part unconstitutional the whole statute must be deemed invalid, if the parts not held to be invalid are so connected with the general scope of the statute that they cannot be separately enforced, or, if so enforced, will not effectuate the manifest intent of the legislature. In *Allen* v. *Louisiana,* 103 U. S. 80, 84, this court referred with approval to what Chief Justice Shaw said on this point in *Warren* v. *Mayor &c.,* 2 Gray, 84. Referring to the rule obtaining in cases of statutes in part constitutional and in part unconstitutional, that eminent jurist said: "But, if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." See also *Poindexter* v. *Greenhow,* 114 U. S. 270; *Spraigue* v. *Thompson,* 118 U. S. 90; *Huntington* v. *Worthen,* 120 U. S. 97.

It results that as the part of § 1283, which relates to the Statement to be filed with the Secretary is unconstitutional, and as the clause in the same section, relating to suits in the state court, is so dependent upon and connected with that part as to be meaningless when standing alone, the section must be held inoperative in all its parts and as not being in the way of the enforcement in any state court of competent jurisdiction of the plaintiff's right to a judgment against the defendant for the amount conceded to be due from him to the Textbook Company under his contract. The judgment must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

MR JUSTICE MOODY heard the argument of this case, participated in its decision in conference, and approves the reversal of the judgment upon the grounds stated in this opinion.

*Reversed.*

THE CHIEF JUSTICE and MR. JUSTICE McKENNA dissent.