57 N.J. Super. 291 (1959)
154 A.2d 650
ELI LILLY AND COMPANY, A CORPORATION OF THE STATE OF INDIANA, PLAINTIFF,
v.
SAV-ON DRUGS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided September 29, 1959.
*293 Messrs. Lorentz and Stamler (Messrs. Joseph H. Stamler and Melvin P. Antell, appearing), attorneys for plaintiff.
Messrs. Lum, Fairlie & Foster (Messrs. William F. Tompkins and Warren E. Dunn, appearing), attorneys for defendant.
SCHERER, J.S.C.
Plaintiff is a corporation of the State of Indiana not authorized to transact business in the State of New Jersey. It does not have a certificate from the Secretary of State as required by R.S. 14:15-4. It filed the present suit to compel the defendant to comply with minimum prices fixed for the resale of plaintiff's products, in accordance with N.J.S.A. 56:4-3 et seq., generally known as the Fair Trade Act. The facts are substantially undisputed and appear in the affidavits filed by both parties.
Plaintiff is one of the largest dealers of pharmaceutical products in this country, if not in the world, and its products *294 are distributed throughout the United States and in foreign countries. Its office and principal place of business is in Indianapolis, Indiana. Plaintiff's products within the United States are sold to selected wholesale distributors and in interstate commerce. It is said that the business done in New Jersey represents 2.7% of its domestic sales. Plaintiff does not sell directly to the retail trade, but its products reach the retail trade through wholesale distributors. Plaintiff says that it leases no sales office, owns no real estate, and maintains no warehouse or other place of business in this State. Its products are "fair traded" in New Jersey under the above cited statute and it claims to have approximately 1,500 contracts in effect in this State signed by retailers of its products, under which these retailers agree to maintain the minimum price structure fixed by plaintiff.
Defendant is a retail drug company with stores in Plainfield and Carteret. Defendant did not sign any contract, but it admits having notice of the fact that plaintiff has fair trade contracts in force and that it is, therefore, bound by the provisions of the Fair Trade Act, unless its other defenses are sustained. Even though a non-signer, defendant must maintain plaintiff's minimum price structure. N.J.S.A. 56:4-6; Lionel Corporation v. Grayson-Robinson Stores, 15 N.J. 191 (1954), appeal denied 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (1954).
The complaint charges that defendant sold plaintiff's products below the minimum prices fixed by it, in that in some instances, while selling at the minimum prices, it gave to its customers "S. & H Green Cooperative Cash Discount stamps," which are redeemable for merchandise, thus in effect lowering the prices of plaintiff's products below the minimum by the amount of the discount represented by the stamps. Whether this constitutes willfully and knowingly advertising or selling plaintiff's products at less than the prices stipulated by it  which defendant denies  need not be now decided. See E.R. Squibb & Sons and Eli Lilly & Company v. Charline's Cut Rate, Inc., 9 N.J. Super. 328 *295 (Ch. Div. 1950); Bristol-Myers Co. v. Picker, 302 N.J. 61, 96 N.E.2d 177, 22 A.L.R.2d 1203 (Ct. App. 1950); Bristol-Myers Co. v. Lit Brothers, Inc., 336 Pa. 81, 6 A.2d 843 (Sup. Ct. 1939); Weco Products Co. v. Mid-City Cut Rate Drug Stores, 55 Cal. App.2d 684, 131 P.2d 856 (D. Ct. App. 1942); Sperry and Hutchinson Co. v. Margetts, 15 N.J. 203 (1954), affirmed 25 N.J. Super. 568 (1953). Defendant is charged also with violating the minimum price structure by selling other products of the plaintiff below the minimum prices in cases where no stamps were given. Plaintiff originally applied for an interlocutory injunction (R.R. 4:67) to enjoin all sales by defendant below minimum prices until final hearing.
Defendant admitted the sales but denied that in any instance the sales were below minimum prices or that there were any willful and knowing sales below such prices, in violation of N.J.S.A. 56:4-6. With respect to the sales made of products other than those with which stamps were given, defendant states that it made up packages from bulk shipments and that the products of plaintiff were packaged under defendant's name and, therefore, they were exempt under the provisions of N.J.S.A. 56:4-5(1). It is doubtful that this constitutes a good defense because the bottle which was marked in evidence clearly disclosed that the plaintiff's name and trademark appeared on the label, and defendant was obviously seeking to gain the benefit of plaintiff's good will. This may not be done. Johnson & Johnson v. Weissbard, 121 N.J. Eq. 585, 586 (E. & A. 1937).
The substantial defense interposed is that plaintiff, being a foreign corporation, was required as a condition precedent to transacting business in this State to file with the Secretary of State, under R.S. 14:15-3, a copy of its certificate of incorporation and a statement providing information required by that section, and, as a preliminary to instituting suit in this State "upon any contract made by it in this state," was required to obtain a certificate from the Secretary *296 of State under R.S. 14:15-4. It is conceded that neither of the last cited sections has been complied with by the plaintiff.
Plaintiff's application for an interlocutory injunction was denied on the ground that its right to relief was not clear as a matter of law, in view of the above mentioned legal defenses. General Electric Co. v. Gem Vacuum Stores, 36 N.J. Super. 234 (App. Div. 1955); Wilentz v. Crown Laundry Service, Inc., 116 N.J. Eq. 40 (Ch. 1934); Allman v. United Brotherhood of Carpenters & Joiners of America, 79 N.J. Eq. 150, 155 (Ch. 1911).
The matter is now before the court on defendant's motion to strike the complaint and for summary judgment on the ground that the plaintiff is transacting business in this State contrary to R.S. 14:15-3 and, being a foreign corporation, is precluded from bringing this action under R.S. 14:15-4. As an integral part of these defenses, the defendant urges the provisions of R.S. 14:15-5, where it is provided as follows:
"Obligations imposed on domestic corporations doing business in foreign states imposed on foreign corporations
When, by the laws of any other state or nation, any other or greater taxes, fines, penalties, licenses, fees or other obligations or requirements are imposed upon corporations of this state, doing business in such other state or nation, or upon their agents therein, than the laws of this state impose upon their corporations or agents doing business in this state, so long as such laws continue in force in such foreign state or nation, the same taxes, fines, penalties, licenses, fees, obligations and requirements of whatever kind shall be imposed upon all corporations of such other state or nation doing business within this state and upon their agents here, but nothing herein shall be held to repeal any duty, condition or requirement now imposed by law upon such corporations of other states or nations transacting business in this state."
The State of Indiana has a similar statute, and the requirements of that state upon foreign corporations are much more onerous than those imposed by our statute. The Indiana statute (Burns' Annotated Statutes of Indiana, 25-314) provides:
*297 "Penalties. No foreign corporation transacting business in this state without procuring a certificate of admission or, if such a certificate has been procured, after its certificate of admission has been withdrawn or revoked, shall maintain any suit, action or proceeding in any of the courts of this state upon any demand, whether arising out of contract or tort; and every such corporation so transacting business shall be liable by reason thereof to a penalty of not exceeding ten thousand dollars ($10,000), to be recovered in any court of competent jurisdiction in an action to be begun and prosecuted by the attorney general in any county in which such business was transacted.
If any foreign corporation shall transact business in this state without procuring a certificate of admission, or, if a certificate has been * * * withdrawn or revoked, or shall transact any business not authorized by such certificate, such corporation shall not be entitled to maintain any suit or action at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state; and it shall be the duty of the attorney-general, upon being advised that any foreign corporation is so transacting business in this state, to bring action in the circuit or superior court of Marion County for an injunction to restrain it from transacting such unauthorized business and for the annulment of its certificate of admission, if one has been procured. * * *." (Emphasis supplied)
Plaintiff argues that it is not doing business in this State and that, even if it be held that it is, the above cited provisions of our Corporation Act do not apply to it because its goods are distributed solely in interstate commerce, thus exempting it from the provisions of any regulatory state statute of the kind above quoted, and that to apply to it the provisions of R.S. 14:15-3, 4 and 5 is to impose a burden upon interstate commerce which is forbidden by the commerce clause of the federal constitution (U.S. Const., Art. I, § 8, clause 3).
Plaintiff countered the motion to dismiss with a renewal of its motion for interlocutory injunction on the ground that, if the defendant's motion should be denied, then plaintiff's motion should be granted because then its right to relief as a matter of law would be clear, thus eliminating the reason for the original denial of its motion.

*298 I.
Is the plaintiff doing business in New Jersey? The facts in the affidavits filed in support of the respective motions differ in only one material respect. Defendant says that plaintiff's salesmen, or "detailmen" as plaintiff calls them, in New Jersey accept orders for the purchase of plaintiff's products, while plaintiff denies this to be true and says that, even though on occasions its representatives may receive an order for the plaintiff's products, they do so only for the purpose of transmitting the same to the wholesaler and that such orders are subject to acceptance or rejection by such wholesaler. In view of the result reached, this fact is immaterial, but it will be assumed that the plaintiff's statement is correct.
The facts are these: Plaintiff maintains an office at 60 Park Place, Newark, New Jersey. Its name is on the door and on the tenant registry in the lobby of the building. (The September 1959 issue of the Newark Telephone Directory lists the plaintiff, both in the regular section and in the classified section under "Pharmaceutical Products," as having an office at 60 Park Place, Newark.) The lessor of the space is plaintiff's employee, Leonard L. Audino, who is district manager in charge of its marketing division for the district known as Newark. Plaintiff is not a party to the lease, but it reimburses Audino "for all expenses incidental to the maintenance and operation of said office." There is a secretary in the office, who is paid directly by the plaintiff on a salary basis. There are 18 "detailmen" under the supervision of Audino. These detailmen are paid on a salary basis by the plaintiff, but receive no commissions. Many, if not all of them, reside in the State of New Jersey. Whether plaintiff pays unemployment or other taxes to the State of New Jersey is not stated. It is the function of the detailmen to visit retail pharmacists, physicians and hospitals in order to acquaint them with the products of the plaintiff with a view to encouraging the use of these *299 products. Plaintiff contends that their work is "promotional and informational only." On an occasion, these detailmen, "as a service to the retailer," may receive an order for plaintiff's products for transmittal to a wholesaler. They examine the stocks and inventory of retailers and make recommendations to them relating to the supplying and merchandising of plaintiff's products. They also make available to retail druggists, free of charge, advertising and promotional material. When defendant opened its store in Carteret, plaintiff offered to provide, and did provide, announcements for mailing to the medical profession, without cost to defendant. The same thing occurred when defendant opened its Plainfield store. Plaintiff says that all of its fair trade contracts and orders for its products are subject to acceptance in Indiana, and therefore none of them constitutes a contract made, or order taken, in this State.
Despite the above recited facts, plaintiff insists that it is not doing business in New Jersey. It concedes that, perhaps for the purpose of having service of process made upon it in a suit in which it is a defendant, it might conceivably be properly served within this State. But, it says that, although it may be subject to the jurisdiction of the state courts and amenable to service of process therein when it is sued, it is not subject to the statute regulating foreign corporations or prescribing the conditions of their doing business in that state. 146 A.L.R. 942. The difference, it is claimed, is ascribable to the fact that the power of a state to subject a foreign corporation engaged in interstate commerce to local regulations is limited and restricted by the commerce clause of the Federal Constitution. On this subject, more hereafter.
The New Jersey Corporation Act does not define "transacting any business" in this State. Our Supreme Court, in A & M Trading Corporation v. Pennsylvania R. Co., 13 N.J. 516 (1953), quoting with approval from Yedwab v. M.A. Richards Corporation, 137 N.J.L. 448 (Sup. Ct. 1948), observed that doing business is a term that is not *300 susceptible of precise definition automatically resolving every case, and that each case turns upon its own circumstances.
To hold under the facts above recited that plaintiff is not doing business in New Jersey is to completely ignore reality. A corporation thus acting within this State should not be permitted to take advantage of the laws of this State which promote its business, such as the Fair Trade Act (which is the sole basis for this suit), and yet not comply with reasonable regulatory provisions of our Corporation Act. As is noted in 146 A.L.R. 957, where this subject is discussed in detail, many corporations selling products in the several states act, with a studied purpose, to avoid the necessity of conforming to state laws or becoming subject to service of process. Thew Shovel Co. v. Superior Court of City and County of San Francisco, 35 Cal. App.2d 183, 95 P.2d 149 (Cal. App. Ct. 1939).
Most of the cases in which the question of whether a corporation is or is not doing business in a particular state has arisen are those in which service of process was attempted to be made upon a foreign corporation or a tax was sought to be assessed. See Miklos v. Liberty Coach Co., 48 N.J. Super. 591 (App. Div. 1958); International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); A & M Trading Corporation v. Pennsylvania R. Co., supra; Westerdale v. Kaiser-Frazer Corporation, 6 N.J. 571 (1951). The present case is the converse of those cited. Here, the plaintiff seeks not to avoid service, but to be permitted to sue.
If, as stated in the Miklos case (quoting from the International Shoe Co. case), 48 N.J. Super. at page 598, "that in order to subject a foreign corporation to a judgment in personam, if it be not present within the territory of the forum, it have `certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice,"'" so *301 the plaintiff here, in the interest of fair play and substantial justice, should not object to complying with the requirements of the Corporation Act and securing a certificate to do business here, thus enabling it to maintain its suit. This, however, the plaintiff refuses to do. It has been held that such a certificate is secured timely if taken out pending an action. Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Works, 92 N.J. Eq. 131, 148 (Ch. 1920). It has been stated that the effect of the International Shoe Co. case was to establish a rule that, where a foreign corporation is present within the State, the court looks not only to the regularity, continuity and extent of the corporate activity within the State, but also to whether the cause of action asserted resulted from the corporate activity within the State and the convenience to the parties. Fletcher, Corporations, § 8713.1, pp. 419-420.
Plaintiff cites Remington Arms Co. v. Lechmere Tire & Sales Co., 158 N.E.2d 134 (Mass. Sup. Jud. Ct. 1959), as an example of a case where a foreign corporation, under facts quite similar to those here, was held not to be doing business in Massachusetts and was not required to secure a certificate to do business as a condition precedent to securing relief under the local Fair Trade Act. The suit was started under the Massachusetts Fair Trade Act, and the defenses here interposed were there set up, but overruled. Plaintiff was granted an injunction. The Massachusetts court held that Remington was not doing business within that state and had a right to use the facilities of the Massachusetts courts. Significantly, however, the court said, 158 N.E.2d at page 138, that its findings were based upon earlier decisions and that it had not been asked to reconsider those in the light of subsequent United States Supreme Court decisions broadening the scope of local regulations dealing with foreign corporations. It would appear, therefore, that, if this precise point had been argued, the result might have been different.
*302 Applying the tests set forth in the cited authorities to the undisputed evidence disclosed by the affidavits, the conclusion is inescapable that the plaintiff was in fact doing business in this State at the time of the acts complained of and was required to, but did not, comply with the provisions of the Corporation Act.

II.
Plaintiff contends that it is excepted from any requirement to comply with foreign corporation provisions of our Corporation Act because it is engaged entirely in interstate commerce, and that it is unlawful for any state to impose such regulations upon interstate commerce as will constitute a burden thereon.
Not all state regulations affecting foreign corporations constitute a burden upon interstate commerce, thereby rendering them unconstitutional. General Electric Co. v. Packard Bamberger & Co., 14 N.J. 209, 221 (1953). The regulation is only unlawful if it materially restricts the free flow of commerce across state lines. In Southern Pacific Co. v. State of Arizona ex rel. Sullivan, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915, 1925 (1945), the court said:
"* * * There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern."
Plaintiff relies heavily for support of its argument on International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678 (1910). There the court struck down a Kansas statute requiring a foreign corporation to secure a certificate to do business as a condition precedent to instituting suit. A comparison of the Kansas statute with ours will show that the requirements of that statute were much more onerous than those in our statute. It is interesting to note, also, that the court did not specifically pass upon *303 the requirement that the corporation have a certificate before instituting suit, but held that, since this section of the statute was so connected with the other sections held unconstitutional as to be inseparable, it, too, had to fall. The court went on to say, 217 U.S. at page 112, 30 S.Ct. at page 487, 54 L.Ed. at page 687:
"* * * How far a corporation of one state is entitled to claim in another state, where it is doing business, equality of treatment with individual citizens in respect of the right to sue and defend in the courts, is a question which the exigencies of this case do not require to be definitely decided. * * *"
This case was followed by our former Supreme Court in Federal Schools, Inc. v. Sidden, 14 N.J. Misc. 892 (1936), but the decision in that case rested not upon any alleged illegal interference with interstate commerce, but upon the fact that the contract sued upon, being one made outside of New Jersey, was not interdicted by the provisions of then section 98 of the Corporation Act (now R.S. 14:15-4).
The trend and philosophy of the more recent cases has been in favor of upholding, rather than striking down, reasonable state regulations of foreign corporations. This is illustrated by the very recent case of Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), in upholding a state income tax imposed upon a foreign corporation. In sustaining the right of a state to exact an income tax from a foreign corporation upon that portion of its profits derived from activities within the state, the court said, 358 U.S. at page 461, 79 S.Ct. at page 364, 3 L.Ed.2d at page 429:
"* * * While it is true that a State may not erect a wall around its borders preventing commerce an entry, it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State. * * *"
As early as 1908 the Supreme Court, in Galveston, H. & S.A.R. Co. v. State of Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908), said:
*304 "It being once admitted, as of course it must be, that not every law that affects commerce among the states is a regulation of it in a constitutional sense, nice distinctions are to be expected. Regulation and commerce among the states both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines. * * *"
If the levying of an income tax on the business of a foreign corporation which is generated within a state is not a burden upon interstate commerce, how can it be said that a simple regulatory statute, such as the cited sections of our Corporation Act, can impose a burden upon interstate commerce?
It must also be borne in mind that the cause of action here sued upon arises only because of the provisions of our Fair Trade Act. Such contract as the plaintiff relies upon would be illegal except for the provisions of that statute. General Electric Co. v. Packard Bamberger & Co., supra. Can it be said that there is anything unfair about requiring a foreign corporation, which seeks to take advantage of a cause of action given it by one of our laws, to comply with the provisions of the other as a condition to taking advantage of the other statute? To pose the question is to suggest the answer.
In the General Electric Co. case the court said that although the power of Congress over interstate commerce may be exclusive as to a direct statutory regulation of interstate commerce as such, the states are authorized under pertinent decisions of the United States Supreme Court (citing cases) to enact regulations which affect all business done in the State, if such regulations are reasonable and not burdensome to interstate commerce. The simple requirements of our Corporation Act are reasonable and cannot be called burdensome. To hold that these regulations constitute such a burden upon interstate commerce as to exempt the plaintiff from the provisions thereof is to indulge in an unwarranted legalism.
The cases of Seagram Distillers Company v. Corenswet, 198 Tenn. 644, 281 S.W.2d 657 (Sup. Ct. 1955); State *305 v. Ford Motor Co., 208 S.C. 379, 38 S.E.2d 242 (Sup. Ct. 1946); Bulova Watch Co. v. Anderson, 270 Wis. 21, 70 N.W.2d 243 (Sup. Ct. 1955), cited by plaintiff in support of its position, have been examined, and the holdings there do not require any change in the result here reached.

III.
Finally, it is argued that the provisions of R.S. 14:15-4 do not apply because that section precludes the maintaining of an action in this State only "upon any contract made by it [the foreign corporation] in this state." Admittedly, the 1,500 contracts made by plaintiff with its retailers are Indiana contracts, since they were subject to acceptance there, and it is said that the orders received for plaintiff's products are likewise subject to acceptance in Indiana.
That this statute is ordinarily limited to contracts made in this State has been held in several cases. Federal Schools, Inc. v. Sidden, supra (and the numerous cases therein cited); Protective Finance Corporation v. Glass, 100 N.J.L. 85 (Sup. Ct. 1924); Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Works, supra. None of these cases was a suit upon a cause of action arising only out of one of our statutes. Also, this argument does not take into consideration the provisions of R.S. 14:15-5 (sometimes referred to as a "mutual spite" or "retaliatory" statute). Most states, including, as above noted, Indiana, have such statutes.
The Indiana statute bars suits arising out of contract, as well as tort, whether such actions are at law or in equity. Plaintiff argues that its action is one in tort and therefore not precluded by the Corporation Act. It would seem, however, that the action is one on contract because, while the defendant is a non-signer of a fair trade contract, it is liable under the statute since other persons have signed such contracts. Non-signers have been held to be bound to the same degree as signers. See Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S.Ct. 139, *306 81 L.Ed. 109 (1936); Lionel Corporation v. Grayson-Robinson Stores, supra.
Quaere: Under these circumstances, is not the relationship of the plaintiff and defendant one of a contract made in the State of New Jersey, created by the Fair Trade Act as a result of the signing of other contracts by persons in New Jersey?
R.S. 14:15-5 was discussed in Ex-Cell-O Corporation v. Farmers Cooperative Dairies Ass'n, 28 N.J. Super. 159 (App. Div. 1953), but its provisions were not applied because the defense was first raised on appeal, and not below. That opinion indicates  without stating reasons  that this may be a disfavored defense. But when timely raised, as here, it should not be so considered. No valid reason is given by plaintiff why the provisions of the statute should not be applied, except the argument concerning interstate commerce heretofore disposed of. In Babe Kaufman Music Corporation v. Mandia, 127 N.J. Eq. 480 (Ch. 1940), this defense was interposed and the court, after reviewing the retaliatory provisions of the New York Corporation Law  the plaintiff being a corporation of New York  refused to enforce the contract.
While it is clear that the provisions of R.S. 14:15-4 apply, and that the relationship between plaintiff and defendant is based upon a contract made in this State by virtue of the Fair Trade Act, it is also clear that the provisions of R.S. 14:15-5 are applicable and, based upon the retaliatory provisions of the Indiana statute, the plaintiff's suit is barred. The plaintiff's application for an interlocutory injunction, therefore, is denied.
Since the affidavits disclose palpably that there is no genuine issue as to any material fact, the defendant is entitled to a summary judgment dismissing the complaint, with costs. R.R. 4:58-3; Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 405 (1958).
A judgment may be presented in accordance with these conclusions.