# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

### WENDELL v. HOLLAND AMERICA LINE.*

PROCESS; FOREIGN CORPORATIONS.

A foreign corporation, operating steamships between Europe and the city of New York, which has, in the District of Columbia, an agent who sells on commission at a regular place of business tickets and reservations for the passage from New York, and receives the money for them, and completes on behalf of the corporation the contract of transportation, which becomes binding without ratification by it, is "doing business" in the District of Columbia within the meaning of § 1537 of the District Code, to such an extent and in such a manner as to render service of summons upon the agent effectual

---

*Corporations—Doing Business within State.*—For presentation of cases upon the question of what constitutes doing business within a state, see the following editorial notes: Single or isolated transactions by foreign corporation as "doing business" within the state, *A. Booth & Co. v. Weigand*, 10 L.R.A.(N.S.) 693; soliciting trade as doing business within the state, *Berger v. Pennsylvania R. Co.* 9 L.R.A.(N.S.) 1214, *Saxony Mills v. Wagner & Co.* 23 L.R.A.(N.S.) 834; sale by foreign corporation of goods stored in state as intrastate business, *Sucker State Drill Co. v. Wirtz*, 18 L.R.A.(N.S.) 134; establishing agency to handle a corporation's product within the state as doing business therein, *Neyens v. Worthington*, 18 L.R.A.(N.S.) 142; sale of single cargo as doing business, *Penn Collieries Co. v. McKeever*, 2 L.R.A.(N.S.) 127.

Vol. XL.—1.

to bring the corporation before the court in an action for breach of a contract made outside of the District of Columbia. (Citing *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159; *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222.)

No. 2481.   Submitted January 8, 1913.   Decided February 3, 1913.

HEARING on an appeal by the plaintiff from an order of the Supreme Court of the District of Columbia quashing the service of the summons in an action brought to recover damages occasioned by alleged delay in the transportation of plaintiff from France to New York.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This action was brought by Mary Dwight Wendell, appellant, in the supreme court of the District of Columbia to recover damages from the defendant steamship company occasioned by its alleged delay in transporting plaintiff from Boulogne, France, to New York.

Summons was issued June 3, 1912, and duly served upon one R. M. Hicks, designated in the marshal's return as defendant's agent. Defendant appeared specially, and moved the court to quash the service, alleging that defendant has never done nor transacted business, nor had a place of business or office, agent, or employee, within the District of Columbia, and denying that Hicks was at any time an officer, agent, or employee of defendant.

In support of the motion, defendant filed the affidavit of Hicks, in which he averred that defendant is a steamship company engaged in the transportation of passengers and freight between Europe and the city of New York; that for over two years past he has sold tickets in which defendant engaged to transport passengers from New York to the ports of Europe; that he receives for his services a commission on the tickets sold, and that defendant pays no part of the rent or office expenses where the tickets are sold, nor of any other place in the District of Columbia.

It appears by affidavits filed on behalf of plaintiff that the sign of the Holland American Line was displayed conspicuously on the front of Hick's office; that in a city directory for 1912 defendant's office was given at 1306 F street, northwest, designating R. M. Hicks as its passenger agent; that defendant's office was given in the telephone directories for 1912 as 1306 F street, northwest, which was Hick's office; that, on October 1, 1912, a lady wrote to defendant at New York, inquiring if it had an agent in Washington with whom she might arrange for passage on one of its vessels, and that defendant replied, referring her to Hicks, giving the street and number of his office.

An alias summons was served on the captain of defendant's steamship Zaandyke while the vessel was incidentally in port at Washington, discharging her cargo. A motion was filed to quash this service; but, for the purposes of this appeal, it will only be necessary to consider the sufficiency of the original service. On hearing, the court sustained the motions, and entered an order quashing the service, from which this appeal was taken.

*Mr. Walter C. Clephane* and *Mr. Frederick A. Fenning,* for the appellant:

1. Defendant was "doing business in the District." *Georgia R. R. Co.* v. *Eichberg,* 107 Md. 363, 68 Atl. 690; *Tuchband* v. *Chicago & A. R. Co.* 53 Hun, 629, 115 N. Y. 437; *D. & R. G. R. Co.* v. *Roller* (C. C. A.) 100 Fed. 738, 49 L.R.A. 77; *Int. Text Book Co.* v. *Lynch,* 81 Vt. 101, 69 Atl. 541; *Int. Text Book Co.* v. *Gillespie,* —Mo. —, 129 S. W. 922; *Int. Text Book Co.* v. *Connelly,* 124 N. Y. Supp. 603, affd. in 125 N. Y. Supp. 1125; *Int. Text Book Co.* v. *Mueller,* 149 Ill. App. 509; *St. L. I. M. & S. R. Co.* v. *Bass,* — Tex. —, 140 S. W. 860; *West Jersey Ice Mfg. Co.* v. *Armour,* 12 Pa. Super. Ct. 443; *Bristol* v. *Brent,* — Utah, —, 110 Pac. 356; *Van Dresser* v. *Or. R. & Nav. Co.* 48 Fed. 202; *Bradstreet Co.* v. *Gill,* 72 Tex. 115, 2 L.R.A. 405.

2. The service effected is good and sufficient. *Re Hohorst,* 150

U. S. 653, 37 L. ed. 1211; *Chicago Board of Trade* v. *Hammond Elevator Co.* 198 U. S. 424, 49 L. ed. 1111; *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222; *Green* v. *Chicago, B. & Q. R. Co.* 205 U. S. 530, 51 L. ed. 916; *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159; *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 54 L. ed. 678; *Toledo Computing Scale Co.* v. *Miller,* 38 App. D. C. 237; *Irons* v. *Simeon L. & Geoorge H. Rogers,* 166 Fed. 781.

*Mr. Arthur Peter* and *Mr. Julian W. Whiting,* for the appellee:

1. The selling of tickets by defendant's agent did not amount to doing business. *Green* v. *Chicago, B. & Q. R. Co.* 205 U. S. 531; *Goepfert* v. *Compagnie Generale Transatlantique,* 156 Fed. 196; *Mexican C. R. Co.* v. *Pinkney,* 149 U. S. 194.

2. A single, isolated transaction does not constitute doing business. *Inter. Text Book Co.* v. *Pigg,* 217 U. S. 91, 104; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727; *Ladd Metals Co.* v. *Am. Mining Co.* 152 Fed. 1008; *Jameson* v. *Simonds Saw Co.* 2 Cal. App. 585; *Lutes* v. *Wysong,* 100 Minn. 112; 19 Cyc. 1268.

*Mr. Justice* VAN ORSDEL delivered the opinion of the Court:

Plaintiff purchased her ticket in Paris, and transacted no business whatever with defendant's agent in Washington.    It is conceded that, when Hicks sells a ticket for transportation from New York to Europe, on one of defendant's steamers, he collects the full price of the ticket, and completes, on behalf of defendant, the contract of transportation, no part of said contract remaining open for confirmation or approval by defendant, and that, after deducting his commission, he sends the balance of the money so collected to the proper officer of the company.    It also appears that Hick's office is the only place where defendant's tickets are sold in the city of Washington, and that he conducts a regular place of business where such tickets

can be had at all times. The business so conducted, therefore, is not an incidental, isolated transaction, but a regular continuing series of transactions.

The sole question to be determined is whether or not this foreign corporation, under the circumstances, is doing business in the District of Columbia to such an extent and in such a manner as to render it subject to service under sec. 1537 of the District Code [31 Stat. at L. 1419, chap. 854]? It is clear that, if the service is to be upheld, it must be under the first paragraph of the section. The second paragraph has no bearing, since the contract plaintiff made with defendant was not made nor to be performed, either in whole or in part, within the District. Section 1537 in its first paragraph provides: "In actions against foreign corporations doing business in the District, all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent, and cannot be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court."

Defendant practically rests its case upon the decision in *Green* v. *Chicago, B. & Q. R. Co.* 205 U. S. 530, 51 L. ed. 916, 27 Sup. Ct. Rep. 595. In that case the railroad company was incorporated under the laws of the State of Iowa, with the eastern terminus of its line of road in Chicago, Illinois. Green was a citizen of Pennsylvania, and brought an action in the circuit court of the United States for the eastern district of that State, to recover damages sustained in the State of Colorado through the alleged negligence of the railroad company. Service was made upon one Heller, an agent of the defendant railroad company in Philadelphia. The railroad company hired an office for Heller, and designated him as its district freight and passenger agent. His duties were to solicit business for his company. The court described his duties as follows: "When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and pro-

cured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington, & Quincy Railroad a ticket over that road. Occasionally he sold to railroad employees, who already had tickets over intermediate lines, orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendants line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant." Upon this state of facts the court held the service insufficient.

The business transacted by Hicks is of a different character from that done by Heller. Heller closed no contracts with passengers and shippers for his company. All his work was subject to ratification by the company. In the case of passengers, the orders for tickets were issued by the initial lines at Philadelphia; in the case of shippers, the bills of lading were not binding upon the railroad until the freight was accepted by it at Chicago. In other words, as the court said, "the business of the agent was to solicit and procure passengers and freight to be transported over the defendant's lines. * * * He sold no tickets and received no payments for transportation of freight. * * * The business shown in this case was, in substance, nothing more than that of solicitation."

In the present case Hicks sold tickets and reservations for the passage from New York, and received the money for them. No act of ratification by defendant remained to be performed. The contracts thus made were as binding and conclusive upon defendant as those made for similar service by any of its officers or agents in any of its offices in the world. In the sale of the tickets Hicks was conducting the particular business for which defendant was incorporated,—contracting for and transporting passengers by ocean voyage. It is idle to say, as suggested in brief for defendant, that the sale of tickets is no

part of the business for which defendant was incorporated. It is not essential that a company be conducting its chief business within the District to subject it to service. As was said in *Ferguson Contracting Co.* v. *Coal & Coke R. Co.* 33 App. D. C. 159, "a corporation is usually created and empowered to engage in some particular business or enterprise, but it necessarily exercises many powers, and transacts many matters of business, incidental to the main object. It has the power, therefore, not only to establish offices for the conduct of its chief business, but also for the transaction of any business incidental thereto. *Re Hohorst,* 150 U. S. 653, 663, 37 L. ed. 1211, 1215, 14 Sup. Ct. Rep. 221; *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222, 226."

As to what constitutes doing business, we need look no further than the most recent utterance of the Supreme Court on this subject in *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 54 L. ed. 678, 27 L.R.A.(N.S.) 493, 30 Sup. Ct. Rep. 481, 18 Ann. Cas. 1103. In that case the text-book company, a Pennsylvania corporation, conducted what was known as the international correspondence schools at Scranton, Pennsylvania. The manner of conducting business is described in the opinion as follows: "In the conduct of its business the company employs local or traveling agents called 'solicitor collectors,' whose duties are to procure and forward to the company at Scranton, from persons in a specified territory, on blanks furnished by it, applications for scholarships in its correspondence schools, and also to collect and forward to the company deferred payments on scholarships." The company had a solicitor-collector in the State of Kansas. "His office in Kansas was procured and maintained at his own expense, for the purpose of furthering the procuring of applications for scholarships and the collection of fees therefor. The company had no office of its own in that State. The solicitor collector was paid a fixed salary by the company and a commission on the number of applications obtained and the collections made."

Suit was brought in Kansas upon a contract signed by Pigg in that State and accepted by the company in Scranton. Pigg

defended upon the ground that the company had not complied with the provisions of a statute of Kansas requiring a foreign corporation desiring to do business in the State to apply for permission to the State charter board, which, if it approves the application, so certifies to the secretary of state, who issues a certificate authorizing it to conduct its business in the State. The statute provides that foreign corporations failing to comply with these requirements shall not recover in any action in the courts of the State. The question whether the corporation was doing business in Kansas was thus squarely presented. The court, approving *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727, 28 L. ed. 1137, 5 Sup. Ct. Rep. 739, held that the text-book company was doing business within the meaning of the Kansas statute.

Counsel for defendant attempts to distinguish the Pigg case on the ground that the corporation was doing in Kansas the business for which it was organized; that the contracts to furnish instruction were carried out by the delivery in Kansas of instruction to its students, and that the agent was paid a fixed salary. We have disposed of the contentions that the sale of the tickets was not part of the business for which defendant was incorporated, and that the sale did not constitute a binding contract upon the defendant entered into in this District. As to contention that Hicks was not paid a fixed salary, it is sufficient to say that, in so far as compensation is an element in determining agency, it is wholly immaterial whether the agent is paid a salary or a commission. It is his power to represent his principal that measures the extent of his agency and the extent of the business transacted. As was said by Chief Justice Shepard in *Ricketts* v. *Sun Printing & Pub. Asso.* 27 App. D. C. 222, "Whether Oulahan was the agent of the defendant corporation, in the sense of the statute, depends not so much upon what he may have been called in the contract for his employment, or upon the fact that he received a general salary for all services rendered, of whatsoever nature, as upon the real character of the duties with the performance of which he was charged."

The judgment quashing the service is reversed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion. *Reversed.*