**H. J. BOISSEAU, Appellant,**

v.

**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellee.**

No. 15014.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1955.

Robert Weinstein, Henry F. Yoder, Rittenberg, Weinstein & Bronfin, New Orleans, La., for appellant.

Bessie Margolin, Chief, Appellate Division, U. S. Dept. of Labor, Washington, D. C., Earl Street, Dallas, Tex., Stuart Rothman, Sol., William W. Watson, Atty., U. S. Dept. of Labor, Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, BORAH, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant operates a "letter shop" in New Orleans. He appeals from a judgment enjoining him from further violating the minimum wage and record-keeping provisions of the Fair Labor Standards Act,[1] Mitchell v. Boisseau, D.C.La., 118 F.Supp. 480.

The record discloses that the activities carried on in appellant's establishment consist of duplicating, mimeographing and otherwise reproducing form letters, advertising circulars and materials and other general private and commercial materials, affixing signatures to form documents, inserting names and addresses in these documents, addressing and "stuffing" envelopes, and stamping and mailing these materials to addressees or delivering them to appellant's customers for mailing. Sometimes, appellant simply duplicates or reproduces in quantity certain documents or data which are not mailed but are desired by the customer. All of appellant's customers were located in New Orleans; but it was agreed that approximately 30 per cent of his total volume of business was addressed to points outside the State of Louisiana, and a substantial proportion of this was actually deposited in the mails by appellant's employees.

Appellant had two men working in his establishment whom he called "office boys", whose principal duty was to affix signatures to documents. They were paid $1.00 per thousand for this work, but the record shows that they also engaged in other activities upon request, and that each participated in every phase of appellant's operation except typing at one time or another.

In addition, appellant employed several "contract workers", ladies who used the typewriter to address letters and envelopes. They worked no specified number of hours and reported for duty only when they were called and when they desired to work. They were allowed to do their work either at appellant's establishment or at their homes, and were paid as follows: $3.00 per thousand for addressing two-line envelopes; $3.50 per thousand for addressing three-line envelopes; $4.00 per thousand for addressing three-line letters; and $4.50 per thousand for addressing four-line letters.

Appellant resisted the suit on the ground that his employees were not engaged in interstate commerce or in the production of goods for interstate commerce and therefore were not subject to the provisions of the Act. Further, he contended that he was entitled to the exemption for retail or service establish-

[1]. 29 U.S.C.A. §§ 206 and 211.

ments provided by Section 13(a) (2) of the Act.[2]

The trial court held that appellant was subject to the Act generally, that he had failed to pay his employees the minimum wage and to keep proper records, and that he had not sustained the burden of proving that "his sales or services are regarded as retail in the particular industry of which he is a part." 118 F.Supp. 482.

Appellant here argues that: (1) his employees are not covered by the Act for the reason that their duties are not sufficiently related to interstate commerce; (2) since the employees could not testify with any degree of certainty the number of letters or envelopes they addressed per hour, there was no competent proof that he had violated the minimum wage provisions of the Act; and (3) his employees are exempt from the coverage of the Act because his business is a retail service establishment.

■ We think there is no doubt that even if appellant's employees themselves are not engaged in commerce, they are certainly engaged "in the production of goods for commerce" within the meaning of the Act. A great volume of the work appellant turns out finds its way into the mails and at least 30 per cent of the total volume of business is placed in the mails addressed to out-of-state parties. Much of this volume is placed in the mails by appellant's own employees. We think it clear that the Act generally applies. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667; Ivey v. Foremost Dairies, Inc., D.C.La.,

106 F.Supp. 793; affirmed in part, 5 Cir., 204 F.2d 186; Russell Co. v. McComb, 5 Cir., 187 F.2d 524.

■ Neither are we impressed by appellant's argument that the Secretary's evidence failed to prove he had paid his employees less than the minimum wage. It is true that none of the employees could state positively the exact number of letters or envelopes they could address, or signatures they could affix, in an hour. However, they testified generally as to the conditions under which they worked, the circumstances which would determine the number they could turn out per hour and the manner in which they worked. Further, they estimated the maximum work they could do per hour. While lacking the degree of mathematical certainty for which appellant contends, this testimony, when fairly considered, shows rather plainly that in many instances appellant's employees earned substantially less than 75¢ per hour; and appellant does not deny that he failed to keep adequate records from which the exact hourly wage could be computed.

We turn now to a discussion of the exemption upon which appellant principally relies. The problem presented is not without difficulty.

Prior to the 1949 amendment, Sec. 13 (a) of the Act exempted from the coverage of Sections 6 and 7 "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce".[3] The test established under this statute was that the sales or services must have been made or rendered to the ultimate consumer for personal rather than commercial or industrial use. Roland Electrical Co. v. Walling,

---

**2.** "The provisions of Sections 6 and 7 shall not apply with respect to (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establish-

ment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Oct. 26, 1949, c. 736, 63 Stat. 917, 29 U.S.C.A. § 213.

**3.** Act of June 25, 1938, c. 676, 52 Stat. 1067.

326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. Under that test, appellant's business could not be considered retail, for the greater portion of his work is for commercial use. However, in 1949 the statute was amended to read as quoted in footnote 2, supra; and the dispute here centers around the motives and intentions of Congress in passing the amendment.

The exemption as now phrased establishes three tests: (1) more than half of the establishment's sales or services must be made or rendered within the state where the establishment is located; (2) at least 75 per cent of the sales or services must be not for resale; and (3) at least 75 per cent of the sales or services must be "recognized as retail sales or services in the particular industry."

We think it was clearly the purpose and intention of Congress to clarify the old law as to what constituted "the greater part" and to abolish the old test as to what is "retail."[4] In doing so, however, it created a difficult problem of administration, for the courts must now identify the "industry" of which the business is a part and determine whether the sales or services are considered "retail" in that industry.

Manifestly, many business concerns engage in activities which have some characteristics of more than one industry and cannot with legal certainty be placed in either. Further, different results may be shown dependent upon the purposes of the classification, so that the Bureau of Census might well disagree with the classification announced by a retailer's organization or by a manufacturer's sales group. In such cases, there might also be discordant views as to whether sales or services are considered retail. The inherent difficulties were recognized by the Congress[5] and by the Administrator.[6]

---

4. Senators Taft and Donnell, members of the Labor and Public Welfare Committee, supplemented the Committee's report with views of their own. After discussing the test established in Roland Electrical Co. v. Walling, supra, they said: "There is no sound basis to distinguish, in determining whether or not a sale is retail, between sales to customers for personal use and sales to customers for business use. Accordingly, it is our view that concurrently with any increase in the minimum wage, section 13(a) (2) of the law should be amended to remove such distinction." U.S.Code Congressional Service, 81st Cong., 1st Sess., 1949, p. 2251.

In the House Conference Report concerning the same amendment it was said: "The third test provides that 75 percent of the establishment's annual dollar volume of sales of goods or services (or of both) must be recognized in the particular industry as retail sales or services. Under this test any sale or service, *regardless of the type of customer*, will have to be treated by the Administrator and courts as a retail sale or service, so long as such sale or service is recognized in the particular industry as a retail sale or service." (Emphasis supplied.) Id., p. 2264.

5. In discussing this problem, Senator Holland (floor manager of the bill in the Senate) said: "There could be various criteria which could be applied, one of which, of course, would be the conclusion of the trade association in the particular industry. But that is only one criterion. Others would apply. The well-settled habits of business must be applied. They will not necessarily be the same in all trades or businesses." 95 Cong.Rec., p. 12,510.

6. In the regulations promulgated by the Wage and Hour Division, Department of Labor, it is said: "Some situations are clear and present no difficulty. The sale of coal, for example, belongs to the coal industry and the sale of ice belongs to the ice industry. In other situations, a sale or service is not so easily earmarked and a wide area of overlapping exists. Household appliances are sold by public utilities as well as by department stores and by stores specializing in the sale of such goods * * *. In these cases, a fair determination as to whether a sale or service is recognized as retail in the 'particular' industry may be made by giving to the term 'industry' its broad statutory definition as a 'group of industries' and thus including all industries wherein a significant quantity of the particular product or service is sold. * * *" In discussing the problem of "recognition" the regulations state: "Such a determination

■ We think it clear that while the burden of proof is on the party seeking refuge in the exemption, the problem of identifying the industry and determining the classification of the sales or services is one of law to be decided from all the facts in each case, including the nature of the business activities themselves, the practices of firms and organizations associated or doing business with the establishment involved, the testimony of "experts" and the general commercial status of the establishment, all considered in the light of experience and common knowledge.

In the instant case, the Secretary assumed that appellant's business was a part of the advertising industry, apparently relying heavily upon the classification in the U. S. Department of Commerce Census of Business, 1948, where "duplicating, addressing, blueprinting, photostating, mailing, mailing lists and stenographic services" were listed under the heading "Miscellaneous Advertising." He was supported by the testimony of Mr. Oakes, professor of Marketing at Loyola University, who gave his opinion that appellant's business would fall in the categories "Miscellaneous Business Services" and "Advertising" in the Standard Industrial Classification Manual prepared by the Bureau of the Budget. Professor Oakes further stated his opinion that the services rendered were neither "retail" nor "wholesale" in the sense in which those terms are usually applied, but that they were "miscellaneous advertising" or "mail advertising services." It is most significant, however, that his entire testimony was based upon what he considered the standard definition of "retail" sales or services—"made to the ultimate consumer for personal or family use." This, of course, is precisely the concept which

Congress repudiated in passing the 1949 amendment.

On the other hand, although appellant does reproduce and distribute or furnish for distribution a substantial volume of advertising material, there is nothing in the record to indicate that he prepared any of the materials himself. As a matter of fact, Dr. Heck, a professor of Economics and Business Administration at Tulane University, who testified for appellant, thought it important that appellant was simply helping to distribute someone else's advertising material and refused to classify appellant's business as a part of the advertising industry.

Further, the evidence clearly discloses that much of appellant's business had nothing to do with advertising materials, but involved phases or elements of many classes of commercial and industrial endeavor. In addition, appellant's services were available as much to individuals, clubs and other organizations as to commercial enterprises; and he in fact had many such customers.

Our conclusion is that appellant's business is not readily susceptible to classification as a part of the advertising industry, but as operated falls into a general category of small, local establishments performing necessary services for local businesses of all types. It is part of no specific industry; it can only be regarded as a segment of the overall group of local industrial and commercial establishments. It is from that point of view, rather than as a part of the "advertising industry", that we must examine appellant's services to see if they are considered retail.

Two of appellant's competitors, operating similar businesses, testified that they considered themselves retail establishments because their services were not

must take into consideration the well-settled habits of business, traditional understanding, and common knowledge. These involve the understanding and knowledge of the purchaser as well as the seller, the wholesaler as well as the retailer, the employee as well as the employer, and private and governmental research and statistical organizations. The understanding of all those and others who have knowledge of recognized classifications in an industry, would all be relevant in the determination of the question." Code of Federal Regulations, 1949 Ed., Sec. 779.8.

for resale and because they were treated by others as retailers.[7] An experienced salesman for a supply firm, which furnished some of appellant's supplies, testified that he sold to appellant and others in the same business at retail prices, without regard to quantity sold, and he expressed his opinion that appellant's was a retail business for the same reasons that his own business was so considered. Dr. Heck's testimony followed to some extent what we might call the general concept of "retail"—that is, sales or services made directly to the consumer and not for resale, but he also classified appellant's business as retail because of its relationship to other businesses and the people it serves. He preferred to classify on the basis of the nature of the services, rather than the use made of the services by customers. The evidence also shows that appellant had only one price list for his services, applicable to all customers, and that his services were available to anyone who might desire them, even individuals who might simply desire to have something duplicated or reproduced. This itself indicates that appellant's business operates in the level usually considered retail.

■ We are of the opinion that the trial court placed too heavy a burden of proof upon appellant. He was not required to show unanimity of opinion on the part of authorities in every industry with which his business might be associated; his burden was simply to show by a preponderance of the whole evidence that his services are "recognized" as retail in the "particular industry" with which he is found by the court to be identified. In the light of what has been said, we think appellant amply sustained that burden. Since it is not questioned that all of appellant's services are rendered to customers located in Louisiana and

that none of his services are for resale, it follows that the provisions of Section 13(a) (2) exempt appellant's employees from the minimum wage provisions of the Act.

Reversed.

7. The Secretary deems it significant that both of these gentlemen admitted they were complying with the provisions of the Act. The record does not disclose their reasons, and this fact is not necessarily inconsistent with their view of their business as retail. There are many reasons why an employer may elect to comply rather than litigate; and we attach no importance to the fact that these witnesses had so elected.