James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Carl ROGERS, individually and doing business as Commercial Credit Bureau, Defendant (two cases).

Civ. Nos. 1421, 1422.

United States District Court
D. Hawaii.

Feb. 16, 1956.

Stuart Rothman, Sol., C. Ira Funston, Acting Asst. Sol., Washington, D. C., Kenneth C. Robertson, Regional Atty., Altero D'Agostini, Atty., U. S. Dept. of Labor, San Francisco, Cal., for plaintiff.

Hyman M. Greenstein, Honolulu, T. H., for defendant.

## McLAUGHLIN, Chief Judge.

The Secretary of Labor instituted these two actions upon the request of Joaquin S. Pereira and Thomas H. Nakasone. In Civil No. 1421, plaintiff seeks to recover unpaid minimum wages and overtime compensation due Pereira and Nakasone under §§ 6 and 7 of the Fair Labor Standards Act of 1938, as amended,[1] hereinafter called the Act; and in Civil No. 1422, plaintiff seeks to enjoin defendant from violating the provisions of Sec. 15(a) (1), 15(a) (2) and 15(a) (5) of the Act.[2]

The defendant, a resident of Honolulu, Territory of Hawaii, was the owner and operator of the Commercial Credit Bureau, which was engaged in the business of collecting delinquent accounts and unpaid bills during the period from August 15, 1953 to February 5, 1955. In excess of 14 per cent of the accounts and bills related to debtors residing outside the Territory. Practically all of these accounts and bills were referred to defendant for collection by Rogers Distributors, Ltd., an Hawaiian corporation, of which the defendant is the president and principal stockholder.

Defendant engaged Pereira as manager of his collection business. Pereira did not invest any money in defendant's collection business, nor did he make any contributions of assets or property to the business. Defendant made the principal management decisions and controlled the work of Pereira. Defendant employed Nakasone as a combination office employee, collector, and solicitor. Nakasone regularly worked from four to six hours per day in the office of defendant, approximately two hours per day outside the office in soliciting accounts for collection, and the remainder

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by Act of October 26, 1949, c. 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq. 29 U.S.C.A. § 206. Minimum Wages:
   "(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—
   "(1) not less than 75 cents an hour".
   29 U.S.C.A. § 207. Maximum hours:
   "(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

2. 29 U.S.C.A. § 215. Prohibited acts; prima facie evidence:

   "(a) * * *, it shall be unlawful for any person—
   "(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 206, or section 207 of this title, * * *
   "(2) to violate any of the provisions of section 206 or section 207 of this title, * * *
   "(5) to violate any of the provisions of section 211(c) of this title, or any regulation or order made or continued in effect under the provisions of section 211 (d) of this title or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect."

of his time was devoted to making collections outside the office of the defendant.

During each week of their employment Pereira and Nakasone were regularly engaged in processing accounts of debtors residing outside of Hawaii. This involved selecting accounts for collection, determining whether letters should be sent, preparing suitable demand letters, and mailing them.

Both Pereira and Nakasone worked over forty hours per week but received a salary of $75 per month which was later increased to $150. Defendant failed to make, keep and preserve adequate and accurate records of his employees showing the hours worked.

Defendant made several defensive contentions:

1. That neither Pereira nor Nakasone were engaged in commerce or in the production of goods for commerce within the meaning of the Act;

2. That Pereira was a partner and hence not an employee within the meaning of the Act;

3. That under Sec. 13(a) (2)[3] of the Act:

a. Pereira was exempt as a bona fide executive;

b. Nakasone was exempt as an outside salesman;

c. Defendant was exempt as proprietor of a retail service establishment. There is no merit to the contentions that Pereira was a partner or bona fide executive, or that Nakasone was an outside salesman. We are thus left with two issues: coverage and exemption as retail service establishment.

We hold that both employees were covered by the Act in that they were engaged in commerce and the production of goods for commerce. It is also our holding that the defendant is not exempt under Sec. 13(a) (2).

### I

The Supreme Court has dealt with the scope of the Act in a number of cases: Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. In this Act, Congress could have exercised the full scope of its commerce powers. Such a course would have made all the cases defining the scope of the commerce clause applicable to this Act. However, Congress here chose not to invoke the total power of the commerce clause. See Kirschbaum Co. v. Walling, supra, 316 U.S. at pages 522–523, 62 S.Ct. 1116. In Walling v. Jacksonville Paper Co., supra, Justice Douglas stated, 317 U.S. at page 567, 63 S.Ct. at page 335:

"It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce."

But in McLeod v. Threlkeld, supra, Justice Reed stated, 319 U.S. at page 493, 63 S.Ct. at page 1249:

"In the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., Congress did not intend that the regulation of hours and wages should

3. 29 U.S.C.A. § 213. Exemptions:
"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); or (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *."

extend to the furthest reaches of federal authority."

These statements which appear to be contradictory are not so. In both cases the Supreme Court meant that in the Fair Labor Standards Act the full scope of the power was not exercised as to local activities, concededly reached by other laws under the commerce clause. To activities, however, which are directly in interstate commerce Congress obviously here exercised its full power. In other words the Act does not apply to local activities which merely affect commerce, obstruct commerce, burden commerce, or compete with commerce, unless the activities are themselves directly in interstate commerce. Thus Congress has chosen a narrow concept of commerce for inclusion in the phrase "engaged in commerce." However, the full scope of congressional power is to be considered in determining whether an activity is directly in interstate commerce.

In the light of the foregoing, we must decide whether the letters here involved are in such commerce. It is well established law that the United States Mail is an instrumentality of interstate commerce, and the use of it for business is interstate commerce. International Textbook Co. v. Pigg, 1910, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678 [4] and Associated Press v. National Labor Relations Board, 1937, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953.[5] But more than that, the very essence of defendant's collection business is dependent upon sending his collection letters

through the mail. Under these circumstances we hold that Pereira and Nakasone were engaged in commerce.

## II

We also hold that Pereira and Nakasone were engaged in the production of goods for commerce. Under Sec. 203 (i), "goods" includes "subjects of commerce of any character". In Lenroot v. Western Union Telegraph Co., 2 Cir., 1944, 141 F.2d 400, 403, the court was faced with the question whether telegraph messages were "goods" within the meaning of " 'production of goods for commerce' ". In the opinion, Judge Learned Hand delved into the very scope of the legislation. Judge Hand demonstrated that the Senate amendment of the words " 'articles of commerce of any character' " to now read " 'subjects of commerce of any character' " expanded the phrase to include intangibles, and concluded, at page 403:

"It is enough that we have unmistakable evidence of a purpose to extend the definition of subdivision (i) to everything which had been considered a 'subject(s) of commerce': *that is, to whatever Congress could regulate as such a subject.*" (Emphasis supplied.)

The Supreme Court in sustaining Judge Hand's views on this point said:

"We think telegraphic messages are clearly 'subjects of commerce' and hence that they are 'goods' under this Act, * * *."

Western Union Telegraph Co. v. Lenroot, 1945, 323 U.S. 490, 502–503, 65

---

4. "If intercourse between persons in different states by means of telegraphic messages conveying intelligence or information is commerce among the states, * * * we cannot doubt that intercourse or communication between persons in different states, by means of correspondence through the mails, is commerce among the states within the meaning of the Constitution, especially where, as here, such intercourse and communication really relate to matters of regular, continuous business * * *." 217 U.S. at page 107, 30 S.Ct. at page 485.

5. Associated Press utilized telegraph, telephone, and the mails in receiving and transmitting news. Held: "These operations involve the constant use of channels of interstate and foreign communication. They amount to commercial intercourse and such intercourse is commerce within the meaning of the Constitution. Interstate communication of a business nature, whatever the means of such communication, is interstate commerce regulable by Congress under the Constitution." 301 U.S. at page 128, 57 S.Ct. at page 654.

S.Ct. 335, 341, 89 L.Ed. 414. The case was reversed on other grounds.

In Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787, 789, the issue was whether the bank was engaged in the "'production of goods for commerce.'" Plaintiffs claimed that stocks, bonds, commercial paper of all sorts, letters, legal documents, advertising pamphlets, papers and records and the like came within the definition of "goods." In holding that the letters were not "goods" Judge Learned Hand said, at page 789: [6]

"A lawyer who in the course of his practice writes letters, or draws deeds or wills, or prepares briefs and records, is not on that account within § 203(j); and the same is true of the correspondence of a broker and of a banker. The definition of 'goods' in § 203(i) might literally go so far even as that; but it would be unreasonable to the last degree to suppose that Congress meant to cover such *incidents of a business* whose purpose did not comprise the production of 'goods' at all." (Emphasis supplied.)

Judge Hand's views of the commercial situation was a practical one based on fears that (at page 789)

"* * * otherwise, the Act would sweep into its maw every business, however local, which manufactured nothing whatever, merely because it was carried on by correspondence, which is the case with all business."

In view of the Western Union case, Judge Hand's decision in the Bozant case can be better understood by referring back to the words of Justice Frankfurter in the Kirschbaum Co. case, 316 U.S. at page 523, 62 S.Ct. at page 1120:

"* * * the Fair Labor Standards Act puts upon the courts the independent responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industrial situations. Our problem is, of course, one of drawing lines. But it is not at all a problem in mensuration. There are no fixed points, though lines are to be drawn. The real question is how the lines are to be drawn— *what are the relevant considerations in placing the line here rather than there.*" (Emphasis supplied.)

Judge Hand drew lines. In the Bozant case the relevant consideration was the fact that the letters were truly *incidental* to the business conducted, whereas in the Western Union case the messages were the very *essence* of the business. So also in a collection business, the collection and demand letters form the very essence of the business. Thus the letters in this case are like the messages of the Western Union case rather than the letters of the Bozant case and therefore are "goods" within the meaning of the Act.

### III

Defendant claims exemption because his business is a retail service establishment. In Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734, the court enumerated three tests, all of which must be satisfactorily met in order to come under the exemption. One of these tests requires that "at least 75 per cent of the sales or services must be 'recognized as retail sales or services in the particular industry.'" Id. at page 737. The burden of proving that a particular business is a retail service establishment is on the party seeking refuge in the exemption, and the burden is to show by a preponderance of the whole evidence that his services are recognized as retail. Id. at page 739.

The only testimony adduced by the defendant is that of Mr. Alvin Smith,

---

6. The Third Circuit followed the Bozant case in holding that letters, work orders, and carbons of the records are merely incidental to the business and therefore not "goods" within the meaning of the Act. Kelly v. Ford, Bacon & Davis, 3 Cir., 1947, 162 F.2d 555; Mitchell v. Household Finance Corp., 3 Cir., 1953, 208 F.2d 667.

who testified from the collection business viewpoint that the business is "primarily selling services," "service operation." There was no testimony by Mr. Smith that the business was "recognized as retail." On the other hand plaintiff called Mr. Howard Wiig, Director of the Bureau of Employment Security, Department of Labor and Industrial Relations, Territory of Hawaii, who testified that the collection business is classed as "miscellaneous business services," but it is "not considered to be in retail trade."

This evidence establishes the collection business to be a service establishment but falls short of proving it to be a retail establishment. The defendant having failed to sustain the burden of proof is not entitled to the benefits of the exemption.

Judgment for the plaintiff in each case as prayed for.