321 F.2d 449
 Hal F. RACHAL and Norman F. Hoffman, Individually and as Co-Partners, d/b/a West Texas Flying Service, and West Texas Flying Service, Inc., Appellants,
v.
Billy Joe ALLEN et al., Appellees.
 No. 20171.
 United States Court of Appeals Fifth Circuit.
 August 8, 1963.
 
 Hal Rachal, Midland, Tex., pro se.
 W. Edward Lee, Longview, Tex., for appellees.
 Beate Bloch, Deputy Counsel, Dept. of Labor, Charles Donahue, Sol. of Labor, Bessie Margolin, Assoc. Sol., Earl Street, Regional Atty., Dept. of Labor, Washington, D. C., for W. Willard Wirtz, Secretary of Labor, U. S. Dept. of Labor, as amicus curiae.
 Before HUTCHESON, BROWN and GEWIN, Circuit Judges.
 HUTCHESON, Circuit Judge.
 
 
 1
 Plaintiffs' suit, brought to recover overtime wages, liquidated damages, and other relief under the Fair Labor Standards Act of 1938, was determined on a motion for summary judgment against the defendants, and they are here insisting that this is another of those all too numerous instances of the misuse of summary judgment procedure to cut a trial short; that here, as so often before, it has served only to prove that short-cutting of trials is not an end in itself but a means to an end, and that in the conduct of trials, as in other endeavors, it is quite often true that the longest way round is the shortest way through. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365.[1]
 
 
 2
 This is the record. The City of Midland, Texas, leased to defendants, Hal F. Rachal and Norman F. Hoffman, dba West Texas Flying Service, certain gasoline storage equipment and other facilities at Midland Air Park (on the northern edge of the City of Midland) "for any purposes incident to the sales, service, storage of aircraft and aircraft parts; the licensing, inspection, leasing and renting of same, and the transportation of persons and cargo by air by charter party or otherwise; and any other activity or business involving or incident to aircraft and use thereof".
 
 
 3
 Another concurrent lease from the City of Midland to the defendants grants the non-exclusive right to sell aviation gasoline and oil at Midland Air Terminal Airport (west of the City of Midland).
 
 
 4
 Another lease from the City of Midland to defendants-appellants covered certain facilities at Midland Air Terminal Airport with the non-exclusive right in and on the demised premises to locate, maintain, and operate full aircraft servicing facilities, to sell aircraft, engines, accessories and parts, and to provide storage space for aircraft, a repair shop for the repairing and servicing of aircraft engines, instruments, propellers and accessories in connection with said business; the right to conduct such activities to apply to aircraft of other persons as well as aircraft belonging to lessee; the right to give flying instructions, to provide pilots for operating planes for others and to carry passengers and freight for hire.
 
 
 5
 Defendants-appellants were engaged in the business known as base aeronautics operators, gasoline and oils were sold and delivered into airplanes of all comers, regardless of point of origin or destination of the airplanes; they maintained shops in which repair work was done on customers' aircraft; they maintained hangars in which airplanes were stored for all comers on a daily or monthly basis; they made repairs to aircrafts and engines; sold and rented aircraft; sold airplane engine parts and accessories; furnished instructors who gave flight instructions; and conducted airplane charter trips of goods and passengers, both in local and interstate flight.
 
 
 6
 The business was highly competitive and appellants welcomed all incoming planes regardless of origin or destination; serviced aircraft carrying freight, whether on schedules or unscheduled trips; and did repair work on anybody's airplane that would come in and let them do it for him. Appellants also repaired aircraft communication equipment in their shops.
 
 
 7
 Appellants were also engaged in the business of selling airplanes for Mooney Aircraft and Mooney Sales Company. The planes they bought by contract with the manufacturer were normally brought to Midland and, in turn, delivered to the customer at Midland. Appellants furnished pilots for other airplane owners and made a charge for the pilot's services so furnished. Appellants shipped airplane parts to any other state they had orders from and purchased airplane parts from other states, and they did not turn down sales because the parts were to be sent to other states.
 
 
 8
 Among appellants' customers were numerous oil companies operating airplanes in interstate commerce. Appellants' customers included, among others, oil well drilling contractors, construction companies, other aviation companies, engineering companies, ranchers and farmers, crop dusters, radio companies, and trucking companies.
 
 
 9
 The period involved is from March 31, 1958, through March 30, 1960.
 
 
 10
 Appellees were in the employ of appellants during such period and were paid wages at a regular hourly rate for all time worked but were not paid the additional fifty percent rate for any hours in excess of forty hours worked in any week during the period involved.
 
 
 11
 It was stipulated that Edna Nicholson, who was bookkeeper for West Texas Flying Service and bookkeeper and treasurer for West Texas Flying Service, Inc., is qualified as an expert for the purpose of having an opinion of the aircraft industry and its conduct and operation, and that she would testify, if called upon to do so, that the type of operation, which is and has been conducted by all of the appellants in this case, is, and at all times has been, recognized as a retail or service establishment in the particular industry and that the sales of goods or services or of both during the period of time in question in this case were recognized as retail sales or services in the particular industry.
 
 
 12
 It was further stipulated that if additional witnesses were called upon by the appellants to testify as experts in the industry each and all of them would testify in like manner as the witness, Edna Nicholson, and would express the same conclusions with respect to the appellants' businesses being considered retail, or service establishments in the industry, and that would be true even though all of these additional witnesses were disinterested witnesses.
 
 
 13
 It was further stipulated that all of the establishments operated by each and all of the appellants will, for the purpose of this lawsuit, be considered as one establishment.
 
 
 14
 Based on this record and with appellants being given no opportunity whatsoever to introduce any evidence in their defense, appellees' motion for summary judgment was granted on the grounds that there is no issue of fact as to any material or controlling issue of law and that appellees are entitled to a judgment for full recovery in the amounts as alleged and prayed in their complaint against appellants as a matter of law.
 
 
 15
 Appellants, here on one specification of error:
 
 
 16
 "The trial court erred in granting appellees' motion for summary judgment and in holding that there is no issue of fact as to any material or controlling issue of law."
 
 
 17
 urge upon us that appellants qualify for the exemption provided for in Sec. 13(a) (2) of the Fair Labor Standards Act of 1938, as amended on October 26, 1949, to read as follows:
 
 
 18
 "Any employee employed by any retail or service establishment, more than 50 percentum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A `retail or service establishment' shall mean an establishment 75 percentum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."
 
 
 19
 Appellees and the Secretary of Labor, as amicus curiae, opposed the contention and argument of appellants with the claim that the business of "base aeronautics operators" is outside the scope of the Section 13(a) (2) exemption.
 
 
 20
 Pressing this contention upon us they argue that the business of base aeronautics operators does not fall within the concept of retail contemplated by Sec. 13(a) (2) and that the judgment was therefore correct.
 
 
 21
 In support of their respective contentions, both appellants and appellees rely upon Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815,[2] and each argues its contention with vigor and conviction.
 
 
 22
 We think it clear that the appellants have the right of it, especially in view of the provision in the amendment making it a question of fact as to whether an establishment is or is not "recognized as retail sales or services in the particular industry". The judgment was, therefore, wrong, and it must be reversed with directions to afford defendants a trial on the facts.
 
 
 
 Notes:
 
 
 [1]
 Whitaker v. Coleman, 5 Cir., 115 F.2d 305; Kennedy v. Silas Mason, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347; Sartor v. Ark. Natl. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Peckham v. Ronrico, 1 Cir., 171 F.2d 653; Colby v. Klune, 2 Cir., 178 F.2d 872; Doehler Metal Furn. Co. v. U. S., 2 Cir., 149 F.2d 130
 
 
 [2]
 Cf. Mitchell v. T. F. Taylor Fertilizer Works, 5 Cir., 233 F.2d 284; Boisseau v. Mitchell, 5 Cir., 218 F.2d 734; Roland Elec. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383
 
 
 
 23
 JOHN R. BROWN, Circuit Judge (dissenting).
 
 
 24
 I respectfully dissent.
 
 
 25
 The opinion implies that the Employer never got a trial. The record shows that he was fortunate to get what he got, he got what he asked for, and now he gets more than he is entitled to. Under no circumstance is this the situation of the Judge running summary judgment into the ground to avoid the travail of adjudicating facts. The Appellants, one of whom serves in the triple role of litigant, chief swearer, trial and appellate advocate, create an incorrect impression of what went on.
 
 
 26
 In the first place, the Employer-witness-lawyer paid no heed to the District Court at all. Judge Thomason's order of March 14, 1961, covering the pretrial hearing he thought he would like to try to hold on February 13, 1961, records the difficulty. After reciting that notice had been sent out a month earlier "directing that attorneys on both sides be present when the case is called for pretrial conference * * *," the order went on to describe the Court's helplessness. "Although this case is now on the call docket for the third consecutive session, the attorney for defendants has never appeared herein, except by answers filed initially, and came not at this time."
 
 
 27
 The only criticism we might make is that the Judge did not use the full power the Rules give him to enter a judgment for the plaintiff employees (subject only to proof of damages) for this contumacious indifference to its orders. But the Court took a more moderate course as the order reflects. "Plaintiffs' attorneys, having appeared at all calls and being present, announced ready on pre-hearing, the Court considered the record as presented and statements vouched by attorneys for plaintiff * * *." After making certain findings,[1] the order provided that "this action shall stand for final trial to hear only evidence as to the nature and character of the services performed and work done by each of the plaintiffs * * * and to receive such evidence as defendants may admissibly offer in defense hereto."
 
 
 28
 It next came on for pretrial hearing before Judge Spears. Extensive stipulations were made. This included the stipulation that the testimony of Edna Nicholson and others would be as set out in the Court's opinion.[2] Most important, there was also full and explicit understanding and agreement between the Court and the litigant-swearer-advocate as to just what evidence, if any, would be further heard or received.[3] This was further manifested by the stipulation that the judgment go against both the partnership and the successor corporation[4] and provide for agreed attorney's fees.[5] And probably most decisive, was the stipulation that the fact findings made by Judge Thomason in his modified default order were correct.[6]
 
 
 29
 Never at a single time did the Employer ever suggest either to Judge Thomason or to Judge Spears in the hearing of January 12, 1962, that it desired to offer any other or further testimony of any kind whatsoever. On the record before us, it is plain from the colloquy between Judge Spears and the litigant-swearer-advocate that the only further testimony contemplated was that to be taken before a Master to determine the statutory percentages of interstate versus intrastate retail business (see note 3, supra). It is clear from this that the Employer assumed that the Judge assumed that he was to determine — either as a matter of law or as a matter of fact — the fact issue as to whether or not the Employer's activity was that of an exempt retail service establishment. Additional intrinsic evidence of this understanding of the Court is found in agreed response of all counsel that the stipulation as to testimony included unnamed experts in the industry who would be "distinterested witnesses" (see note 2, supra). Their disinterested status obviously goes to credibility — a determination of which all counsel thought they were committing to the Judge.
 
 
 30
 As a matter of simple, plain fair dealing with a Judge, counsel ought not by acquiescence in the Court's statements mislead the Court into thinking that one and only one issue was left open and that such issue was to be handled in a particular way. The result so far is that a litigant can ignore the orders of a Court to appear at pretrial hearings, agree on the record with the Court's proposed disposition of the case, and then without exception, objection, or reservation of any kind, secure a reversal when the result turns out not to be to his liking.
 
 
 31
 But even more important, the Employer here is getting a trial to which it is clearly not entitled. By that I mean that crediting fully the stipulated expert testimony for all that the testimony said, other proof (and findings) demonstrated as a matter of law that these employees were engaged in performing interstate employment not within the retail exemption. Thus it does not matter whether the Judge should have either "tried" or let a jury "try" the issues on which, by reason of the stipulation, there was no dispute. In any event, the law compelled a finding for the plaintiffs.
 
 
 32
 We start out with the basic proposition that the burden of establishing the exemption was on the Employer. Coverage concededly existed unless the Employer came within the retail exemption. That burden is a heavy one. For "* * * these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit". Arnold v. Ben Kanowsky, 1960, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393; Mitchell v. Kentucky Finance Co., 1959, 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815; Goldberg v. Warren G. Kleban Engineering Corp., 5 Cir., 1962, 303 F.2d 855, 859.
 
 
 33
 Equally significant is the principle that since coverage is determined by the employee's activity, not the business of the employer, it does not matter how small may be the percentage of concededly interstate business in comparison with local, intrastate business. Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Mabee v. White Plains Publishing Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 1954, 210 F.2d 427, cert. denied, 1954, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136. Hence it is irrelevant whether in terms of dollars, incidents, or other measures, the volume of interstate activities of this Employer was slight. This no more affects the outcome "* * * than does the predominate local intrastate business of an employer remove him from the Act as to those employees whose activities are interstate in nature." Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F.2d 380, 383. At most, all that is required is that with respect to the particular employees involved "each of the employees perform substantial activities in connection with * *" the "regular non sporadic" — even though small in amount — interstate operations of the employer. Mitchell v. Jaffe, 5 Cir., 1958, 261 F.2d 883, 887; Sams v. Beckworth, 5 Cir., 1958, 261 F.2d 889, 891; Mitchell v. Hooper Equipment Co., 5 Cir., 1960, 279 F.2d 893, 897.
 
 
 34
 In the light of these legal principles, the record both by findings and uncontradicted evidence demonstrates that the Employer regularly engaged in interstate activities and that these plaintiffs performed essential tasks in connection with them.
 
 
 35
 Thus the Court by findings which are not attacked, and which were indeed stipulated to be accurate,[7] found that the Employer engaged in these activities. As a part of its base aeronautics operations, the Employer "furnished instructors who gave flights instructions, conducted airplane charter trips of goods and passengers, both in local and interstate flight." The Employer regularly "furnished pilots for other airplane owners, regardless of [where] the third person's plane went, and made a charge for the pilot's services so furnished." These activities were a part of those which local municipal authorities specifically authorized in the lease-operating contracts. So much were they a part of anticipated activities that rental charges were determined on a percentage of gross proceeds received therefor.[8]
 
 
 36
 And all of this was borne out by the sworn testimony of Employer's principal spokesman that Employer regularly furnished flight instructors,[9] undertook charter trips for carriage of freight and passengers[10] and furnished pilots to fly planes belonging to third persons.[11]
 
 
 37
 The litigant-swearer-advocate also made clear that it was a part of the regular duties of the plaintiff-employees to fuel, service, move or repair the aircraft used and to maintain or clean hangars, shops, and other related areas.[12]
 
 
 38
 Whatever might be the status under the F.L.S.A. of pilot instruction or pilot furnishing, it is obvious that to charter and fly chartered planes for the interstate carriage of goods and persons is the very essence of commerce.[13] Thus eliminated are all of the uncertainties which may be troublesome when an employer is merely engaged "in the production of goods for commerce." See Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753; Mitchell v. Jaffe, 5 Cir., 1958, 261 F.2d 883; Mitchell v. Hooper Equipment Co., 5 Cir., 1960, 279 F.2d 893, 898. Transportation of goods and passengers by air is extensively regulated by the Federal Government,[14] and in no sense is this a retail business or service establishment.[15]
 
 
 39
 As to pilot furnishing, I would assume that ever since the Thirteenth Amendment, the business of supplying bodies could hardly be retail. Among legitimate activities of this kind, many are "in commerce" or "in the production of goods for commerce." But the result is always to make the employer of such "bodies" subject to the Act if the workers perform services in or sufficiently related to commerce or the production of goods thereof.[16]
 
 
 40
 Consequently, whatever might be thought of professional flight instruction[17] as retail, it is uncontradicted that by furnishing transportation and essential workers in transportation, the Employer is subject to the Act as a matter of law. The retail exemption does not help because under no conceivable theory could interstate air transportation be a retail or service establishment.
 
 
 41
 When the case goes back for a trial it does not deserve, the trial Court will be compelled to reach the same result it has already announced. And failing that, we will be compelled to reverse it. It ought to stop now.
 
 
 
 Notes:
 
 
 [1]
 These were subsequently stipulated to be correct, see note 6, infra
 
 
 [2]
 In addition to that concerning Edna Nicholson's testimony, it was further stipulated:
 "The Court: It is further stipulated * * * that if additional witnesses were called * * * to testify as experts in the industry, each * * * would testify in like manner as the witness Edna Nicholson, and would express the same conclusions with respect to the defendants' businesses being considered retail or service establishments in the industry, and that would be true even though all of these additional witnesses were disinterested witnesses; is that agreeable?
 "Mr. Lee [plaintiff's counsel]: Yes.
 "Mr. Rachal: Yes."
 
 
 [3]
 "The Court: For the record: in the event the Court should find that the businesses involved fit the statutory definition of a retail or service establishment, then it is the Court's present intention to appoint a Master who would take evidence and make his findings of fact and conclusions of law with respect to the volume of business done by the defendants during the two year period immediately preceding the filing of this suit and the proportions thereof limited to intra-state consumption. Is that right, Mr. Rachal?
 "Mr. Rachal: Yes, sir, that is right."
 
 
 [4]
 "Mr. Rachal: I think we are agreeable that any judgment entered in the case, if any, would be a joint and several judgment against all of the defendants for the total amounts recovered
 "The Court: It is agreeable between the parties that all of the establishments operated by each and all of the defendants will, * * * be considered as one establishment, is that correct?
 "Mr. Rachal: Yes."
 
 
 [5]
 "The Court: It is further stipulated * * * that in the event a judgment is rendered in behalf of the plaintiffs * * * that a reasonable attorney's fee * * * would be 25% * * * which * * * should run to the benefit of the plaintiff."
 
 
 [6]
 "The Court: Mr. Rachal agrees that the findings of the facts reflected in the pre-trial orders entered by Judge Thomason are accurate, is that correct?
 "Mr. Rachal: Yes, sir."
 
 
 [7]
 See note 6, supra
 
 
 [8]
 One of the lease contracts authorized Employer to engage in "the transportation of persons and cargo by air by charter party or otherwise." For this the city was to receive "(4%) of the gross proceeds received from * * * airplane charter service, airplane rental service, student instruction fees * * *." One of the contracts expressly gave Employer "* * * f. The right to give flying instructions, to provide pilots for operating planes for others and to carry passengers and freight for hire, subject to all appropriate laws of the Federal Government * * * and the requirements of the CAA * * *."
 
 
 [9]
 "Q. And you conducted or furnished instructors who gave flight instructions?
 "A. That is correct."
 
 
 [10]
 "Q. Now you conducted airplane charter trips and local flights, didn't you?
 "A. That is correct.
 "Q. Some of those charter trips extended to other states, didn't they?
 "A. That is correct.
 "Q. Now those charter trips were both merchandise or goods, on occasions, and on other occasions were charter trips for passengers?
 "A. That is correct."
 
 
 [11]
 "Q. Have you furnished pilots for other owners' planes when their pilots were not available?
 "A. Yes, sir.
 "Q. Do you furnish that service?
 "A. Yes, sir.
 "Q. And regardless of where that plane goes that he flies, that plane belongs to some third person, and you make a charge for that pilot's service?
 "A. That is correct.
 "Q. And you pay the pilot that you have furnished instead of the owner of the plane paying him?
 "A. He is normally one of our employees and he is on our payroll and we furnish that — that is one of the services that we provide for customers, is pilot service * * *."
 
 
 [12]
 As to the employee plaintiffs, he testified:
 "Q. Now they also looked after the companies' aircraft, that was used in instructing pilots and used for charter trips of merchandise and passengers, did they?
 "A. That's right.
 * * * * *
 "Q. Whatever aircraft you had that belonged to the partnership or the corporation, they also serviced that aircraft?
 "A. That's correct."
 
 
 [13]
 29 U.S.C.A. § 203(b). "`Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."
 
 
 [14]
 See 49 U.S.C.A. §§ 1301(3), (4), (7), (10), (20), and (26); 1302(c), (e); 1303(a); 1371; 1373; 1374; 1386; 1421; 1422; 1423; 1424; 1425; 1429; 1430
 
 
 [15]
 The only transportation activities exempted under the Act are:
 29 U.S.C.A. § 213(a).
 "(9) any employee of a street, suburban or interurban electric railway, or local trolley or motorbus carrier, not included in other exemptions contained in this section;
 * * * * *
 "(11) any switchboard operator employed in a public telephone exchange which has not more than seven hundred and fifty stations; or
 "(12) any employee of an employer engaged in the business of operating taxicabs.
 * * * * *
 "(14) any employee employed as a seaman."
 29 U.S.C.A. § 213(b).
 Overtime provisions (§ 207) shall not apply to certain persons subject to Interstate Commerce Commission regulation or "(3) any employee of a carrier by air subject to the provisions of sections 181-188 of Title 45 * * *."
 
 
 [16]
 See, for example, the many cases involving the furnishing of watchmen by established commercial detective agencies. Walling v. Sondock, 5 Cir., 1942, 132 F.2d 77, cert. denied, 1943, 318 U.S. 772, 63 S.Ct. 769, 87 L.Ed. 1142; Durkin v. Joyce Agency, Inc., D.C.Ill., 1953, 110 F.Supp. 918, aff'd sub nom. Mitchell v. Joyce Agency, Inc., 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740; Mitchell v. John R. Cowley & Bro., Inc., 5 Cir., 1961, 292 F.2d 105, 108; Bowman v. Pace Co., 5 Cir., 1941, 119 F.2d 858; Mitchell v. Strickland Transportation Co., 5 Cir., 1955, 228 F.2d 124. See also Cedillo v. Standard Oil Co., 5 Cir., 1961, 291 F.2d 246, as to the furnishing of labor to another by a so-called independent contractor
 
 
 [17]
 Even this comes within the power and precise regulation of the Federal Aviation Agency. 49 U.S.C.A. § 1427